(Slip Opinion)     OCTOBER TERM, 2010     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RANSOM *v.* FIA CARD SERVICES, N. A., FKA MBNA AMERICA BANK, N. A.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–907.   Argued October 4, 2010—Decided January 11, 2011

Chapter 13 of the Bankruptcy Code uses a statutory formula known as the "means test" to help ensure that debtors who *can* pay creditors *do* pay them.  The means test instructs a debtor to determine his "disposable income"—the amount he has available to reimburse creditors—by deducting from his current monthly income "amounts reasonably necessary to be expended" for, *inter alia,* "maintenance or support."  11 U. S. C. §1325(b)(2)(A)(i).  For a debtor whose income is above the median for his State, the means test indentifies which expenses qualify as "amounts reasonably necessary to be expended."  As relevant here, the statute provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides."  §707(b)(2)(A)(ii)(I).

The Standards are tables listing standardized expense amounts for basic necessities, which the IRS prepares to help calculate taxpayers' ability to pay overdue taxes.  The IRS also creates supplemental guidelines known as the "Collection Financial Standards," which describe how to use the tables and what the amounts listed in them mean.  The Local Standards include an allowance for transportation expenses, divided into vehicle "Ownership Costs" and vehicle "Operating Costs." The Collection Financial Standards explain that "Ownership Costs" cover monthly loan or lease payments on an automobile; the expense amounts listed are based on nationwide car financing data.  The Collection Financial Standards further state that a taxpayer who has no car payment may not claim an allowance

for ownership costs.

When petitioner Ransom filed for Chapter 13 bankruptcy relief, he listed respondent (FIA) as an unsecured creditor. Among his assets, Ransom reported a car that he owns free of any debt. In determining his monthly expenses, he nonetheless claimed a car-ownership deduction of $471, the full amount specified in the "Ownership Costs" table, as well as a separate $388 deduction for car-operating costs. Based on his means-test calculations, Ransom proposed a bankruptcy plan that would result in repayment of approximately 25% of his unsecured debt. FIA objected on the ground that the plan did not direct all of Ransom's disposable income to unsecured creditors. FIA contended that Ransom should not have claimed the car-ownership allowance because he does not make loan or lease payments on his car. Agreeing, the Bankruptcy Court denied confirmation of the plan. The Ninth Circuit Bankruptcy Appellate Panel and the Ninth Circuit affirmed.

*Held:* A debtor who does not make loan or lease payments may not take the car-ownership deduction. Pp. 6–18.

(a) This Court's interpretation begins with the language of the Bankruptcy Code, which provides that a debtor may claim only "applicable" expense amounts listed in the Standards. Because the Code does not define the key word "applicable," the term carries its ordinary meaning of appropriate, relevant, suitable, or fit. What makes an expense amount "applicable" in this sense is most naturally understood to be its correspondence to an individual debtor's financial circumstances. Congress established a filter, permitting a debtor to claim a deduction from a National or Local Standard table only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor will incur the kind of expense covered by the table during the life of the plan. Had Congress not wanted to separate debtors who qualify for an allowance from those who do not, it could have omitted the term "applicable" altogether. Without that word, all debtors would be eligible to claim a deduction for each category listed in the Standards. Interpreting the statute to require a threshold eligibility determination thus ensures that "applicable" carries meaning, as each word in a statute should.

This reading draws support from the statute's context and purpose. The Code initially defines a debtor's disposable income as his "current monthly income . . . less amounts reasonably necessary to be expended." §1325(b)(2). It then instructs that such reasonably necessary amounts "shall be determined in accordance with" the means test. §1325(b)(3). Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incur-

ring an expense in the relevant category. Further, the statute's purpose—to ensure that debtors pay creditors the maximum they can afford—is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Pp. 6–9.

   (b) The vehicle-ownership category covers only the costs of a car loan or lease. The expense amount listed ($471) is the average monthly payment for loans and leases nationwide; it is not intended to estimate other conceivable expenses associated with maintaining a car. Maintenance expenses are the province of the separate "Operating Costs" deduction. A person who owns a car free and clear is entitled to the "Operating Costs" deduction for all driving-related expenses. But such a person may not claim the "Ownership Costs" deduction, because that allowance is for the separate costs of a car loan or lease. The IRS' Collection Financial Standards reinforce this conclusion by making clear that individuals who have a car but make no loan or lease payments may take only the operating-costs deduction. Because Ransom owns his vehicle outright, he incurs no expense in the "Ownership Costs" category, and that expense amount is therefore not "applicable" to him. Pp. 9–11.

   (c) Ransom's arguments to the contrary—an alternative interpretation of the key word "applicable," an objection to the Court's view of the scope of the "Ownership Costs" category, and a criticism of the policy implications of the Court's approach—are unpersuasive. Pp. 11–18.

577 F. 3d 1026, affirmed.

   KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined. SCALIA, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–907

JASON M. RANSOM, PETITIONER *v.* FIA CARD
SERVICES, N. A., FKA MBNA AMERICA
BANK, N. A.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 11, 2011]

JUSTICE KAGAN delivered the opinion of the Court.

Chapter 13 of the Bankruptcy Code enables an individual to obtain a discharge of his debts if he pays his creditors a portion of his monthly income in accordance with a court-approved plan. 11 U. S. C. §1301 *et seq.* To determine how much income the debtor is capable of paying, Chapter 13 uses a statutory formula known as the "means test." §§707(b)(2) (2006 ed. and Supp. III), 1325(b)(3)(A) (2006 ed.). The means test instructs a debtor to deduct specified expenses from his current monthly income. The result is his "disposable income"—the amount he has available to reimburse creditors. §1325(b)(2).

This case concerns the specified expense for vehicle-ownership costs. We must determine whether a debtor like petitioner Jason Ransom who owns his car outright, and so does not make loan or lease payments, may claim an allowance for car-ownership costs (thereby reducing the amount he will repay creditors). We hold that the text, context, and purpose of the statutory provision at issue preclude this result. A debtor who does not make loan or

lease payments may not take the car-ownership deduction.

## I

## A

"Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P. A.* v. *United States*, 559 U. S. ___, ___ (2010) (slip op., at 1). In particular, Congress adopted the means test—"[t]he heart of [BAPCPA's] consumer bankruptcy reforms," H. R. Rep. No. 109–31, pt. 1, p. 2 (2005) (hereinafter H. R. Rep.), and the home of the statutory language at issue here—to help ensure that debtors who *can* pay creditors *do* pay them. See, *e.g., ibid.* (under BAPCPA, "debtors [will] repay creditors the maximum they can afford").

In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. §§1325(b)(1)(B) and (b)(4).[1] The statute defines "disposable income" as "current monthly income" less "amounts reasonably necessary to be expended" for "maintenance or support," business expenditures, and certain charitable contributions. §§1325(b)(2)(A)(i) and (ii). For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as "amounts

---

[1] Chapter 13 borrows the means test from Chapter 7, where it is used as a screening mechanism to determine whether a Chapter 7 proceeding is appropriate. Individuals who file for bankruptcy relief under Chapter 7 liquidate their nonexempt assets, rather than dedicate their future income, to repay creditors. See 11 U. S. C. §§704(a)(1), 726. If the debtor's Chapter 7 petition discloses that his disposable income as calculated by the means test exceeds a certain threshold, the petition is presumptively abusive. §707(b)(2)(A)(i). If the debtor cannot rebut the presumption, the court may dismiss the case or, with the debtor's consent, convert it into a Chapter 13 proceeding. §707(b)(1).

reasonably necessary to be expended." The test supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations. See, *e.g.*, *In re Slusher*, 359 B. R. 290, 294 (Bkrtcy. Ct. Nev. 2007).

Under the means test, a debtor calculating his "reasonably necessary" expenses is directed to claim allowances for defined living expenses, as well as for secured and priority debt. §§707(b)(2)(A)(ii)–(iv). As relevant here, the statute provides:

> "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides." §707(b)(2)(A)(ii)(I).

These are the principal amounts that the debtor can claim as his reasonable living expenses and thereby shield from creditors.

The National and Local Standards referenced in this provision are tables that the IRS prepares listing standardized expense amounts for basic necessities.[2] The IRS uses the Standards to help calculate taxpayers' ability to pay overdue taxes. See 26 U. S. C. §7122(d)(2). The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the

---

[2] The National Standards designate allowances for six categories of expenses: (1) food; (2) housekeeping supplies; (3) apparel and services; (4) personal care products and services; (5) out-of-pocket health care costs; and (6) miscellaneous expenses. Internal Revenue Manual §5.15.1.8 (Oct. 2, 2009), http://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1012 (all Internet materials as visited Jan. 7, 2011, and available in Clerk of Court's case file). The Local Standards authorize deductions for two kinds of expenses: (1) housing and utilities; and (2) transportation. *Id.*, §5.15.1.9.

tables and what the amounts listed in them mean.

The Local Standards include an allowance for transportation expenses, divided into vehicle "Ownership Costs" and vehicle "Operating Costs."[3] At the time Ransom filed for bankruptcy, the "Ownership Costs" table appeared as follows:

| *Ownership Costs* | | |
|---|---|---|
| | **First Car** | **Second Car** |
| **National** | $471 | $332 |

App. to Brief for Respondent 5a. The Collection Financial Standards explain that these ownership costs represent "nationwide figures for monthly loan or lease payments," *id.,* at 2a; the numerical amounts listed are "base[d] . . . on the five-year average of new and used car financing data compiled by the Federal Reserve Board," *id.,* at 3a. The Collection Financial Standards further instruct that, in the tax-collection context, "[i]f a taxpayer has no car payment, . . . only the operating costs portion of the transportation standard is used to come up with the allowable transportation expense." *Ibid.*

B

Ransom filed for Chapter 13 bankruptcy relief in July 2006. App. 1, 54. Among his liabilities, Ransom itemized over $82,500 in unsecured debt, including a claim held by respondent FIA Card Services, N. A. (FIA). *Id.,* at 41. Among his assets, Ransom listed a 2004 Toyota Camry, valued at $14,000, which he owns free of any debt. *Id.,* at 38, 49, 52.

For purposes of the means test, Ransom reported in-

---

[3] Although both components of the transportation allowance are listed in the Local Standards, only the operating-cost expense amounts vary by geography; in contrast, the IRS provides a nationwide figure for ownership costs.

come of $4,248.56 per month. *Id.,* at 46. He also listed monthly expenses totaling $4,038.01. *Id.,* at 53. In determining those expenses, Ransom claimed a car-ownership deduction of $471 for the Camry, the full amount specified in the IRS's "Ownership Costs" table. *Id.,* at 49. Ransom listed a separate deduction of $338 for car-operating costs. *Ibid.* Based on these figures, Ransom had disposable income of $210.55 per month. *Id.,* at 53.

Ransom proposed a 5-year plan that would result in repayment of approximately 25% of his unsecured debt. *Id.,* at 55. FIA objected to confirmation of the plan on the ground that it did not direct all of Ransom's disposable income to unsecured creditors. *Id.,* at 64. In particular, FIA argued that Ransom should not have claimed the car-ownership allowance because he does not make loan or lease payments on his car. *Id.,* at 67. FIA noted that without this allowance, Ransom's disposable income would be $681.55—the $210.55 he reported plus the $471 he deducted for vehicle ownership. *Id.,* at 71. The difference over the 60 months of the plan amounts to about $28,000.

## C

The Bankruptcy Court denied confirmation of Ransom's plan. App. to Pet. for Cert. 48. The court held that Ransom could deduct a vehicle-ownership expense only "if he is currently making loan or lease payments on that vehicle." *Id.,* at 41.

Ransom appealed to the Ninth Circuit Bankruptcy Appellate Panel, which affirmed. *In re Ransom,* 380 B. R. 799, 808–809 (2007). The panel reasoned that an "expense [amount] becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense." *Id.,* at 807. "[W]hat is important," the panel noted, "is the payments that debtors actually make, not how many cars they own, because [those] payments . . . are what actually affect their ability to" reimburse unse-

cured creditors. *Ibid.*

The United States Court of Appeals for the Ninth Circuit affirmed. *In re Ransom,* 577 F. 3d 1026, 1027 (2009). The plain language of the statute, the court held, "does not allow a debtor to deduct an 'ownership cost' . . . that the debtor does not have." *Id.,* at 1030. The court observed that "[a]n 'ownership cost' is not an 'expense'—either actual or applicable—if it does not exist, period." *Ibid.*

We granted a writ of certiorari to resolve a split of authority over whether a debtor who does not make loan or lease payments on his car may claim the deduction for vehicle-ownership costs. 559 U. S. ___ (2010).[4] We now affirm the Ninth Circuit's judgment.

II

Our interpretation of the Bankruptcy Code starts "where all such inquiries must begin: with the language of the statute itself." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989). As noted, the provision of the Code central to the decision of this case states:

> "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides." §707(b)(2)(A)(ii)(I).

The key word in this provision is "applicable": A debtor may claim not all, but only "applicable" expense amounts

---

[4] Compare *In re Ransom,* 577 F. 3d 1026, 1027 (CA9 2009) (case below), with *In re Washburn*, 579 F. 3d 934, 935 (CA8 2009) (permitting the allowance), *In re Tate*, 571 F. 3d 423, 424 (CA5 2009) (same), and *In re Ross-Tousey*, 549 F. 3d 1148, 1162 (CA7 2008) (same). The question has also divided bankruptcy courts. See, *e.g., In re Canales*, 377 B. R. 658, 662 (Bkrtcy. Ct. CD Cal. 2007) (citing dozens of cases reaching opposing results).

listed in the Standards. Whether Ransom may claim the $471 car-ownership deduction accordingly turns on whether that expense amount is "applicable" to him.

Because the Code does not define "applicable," we look to the ordinary meaning of the term. See, *e.g., Hamilton* v. *Lanning*, 560 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 6). "Applicable" means "capable of being applied: having relevance" or "fit, suitable, or right to be applied: appropriate." Webster's Third New International Dictionary 105 (2002). See also New Oxford American Dictionary 74 (2d ed. 2005) ("relevant or appropriate"); 1 Oxford English Dictionary 575 (2d ed. 1989) ("[c]apable of being applied" or "[f]it or suitable for its purpose, appropriate"). So an expense amount is "applicable" within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit.

What makes an expense amount "applicable" in this sense (appropriate, relevant, suitable, or fit) is most naturally understood to be its correspondence to an individual debtor's financial circumstances. Rather than authorizing all debtors to take deductions in all listed categories, Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if but only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to "*the debtor's* applicable monthly expense amounts," §707(b)(2)(A)(ii)(I) (emphasis added)—in other words, the expense amounts applicable (appropriate, etc.) to each particular debtor. Identifying these amounts requires looking at the financial situation of the debtor and asking whether a National or Local Standard table is relevant to him.

If Congress had not wanted to separate in this way

debtors who qualify for an allowance from those who do not, it could have omitted the term "applicable" altogether. Without that word, all debtors would be eligible to claim a deduction for each category listed in the Standards. Congress presumably included "applicable" to achieve a different result. See *Leocal* v. *Ashcroft*, 543 U. S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever possible"). Interpreting the statute to require a threshold determination of eligibility ensures that the term "applicable" carries meaning, as each word in a statute should.

This reading of "applicable" also draws support from the statutory context. The Code initially defines a debtor's disposable income as his "current monthly income . . . less amounts *reasonably necessary to be expended*." §1325(b)(2) (emphasis added). The statute then instructs that "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with" the means test. §1325(b)(3). Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning of the statute.[5]

Finally, consideration of BAPCPA's purpose strengthens our reading of the term "applicable." Congress designed

─────────

[5] This interpretation also avoids the anomalous result of granting preferential treatment to individuals with above-median income. Because the means test does not apply to Chapter 13 debtors whose incomes are below the median, those debtors must prove on a case-by-case basis that each claimed expense is reasonably necessary. See §§1325(b)(2) and (3). If a below-median-income debtor cannot take a deduction for a nonexistent expense, we doubt Congress meant to provide such an allowance to an above-median-income debtor—the very kind of debtor whose perceived abuse of the bankruptcy system inspired Congress to enact the means test.

the means test to measure debtors' disposable income and, in that way, "to ensure that [they] repay creditors the maximum they can afford." H. R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Cf. *Hamilton,* 560 U. S., at \_\_\_ (slip op., at 14) (rejecting an interpretation of the Bankruptcy Code that "would produce [the] senseless resul[t]" of "deny[ing] creditors payments that the debtor could easily make"). Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives.

Because we conclude that a person cannot claim an allowance for vehicle-ownership costs unless he has some expense falling within that category, the question in this case becomes: What expenses does the vehicle-ownership category cover? If it covers loan and lease payments alone, Ransom does not qualify, because he has no such expense. Only if that category also covers other costs associated with having a car would Ransom be entitled to this deduction.

The less inclusive understanding is the right one: The ownership category encompasses the costs of a car loan or lease and nothing more. As noted earlier, the numerical amounts listed in the "Ownership Costs" table are "base[d] . . . on the five-year average of new and used car financing data compiled by the Federal Reserve Board." App. to Brief for Respondent 3a. In other words, the sum $471 is the average monthly payment for loans and leases nationwide; it is not intended to estimate other conceivable expenses associated with maintaining a car. The Standards do account for those additional expenses, but in a different way: They are mainly the province of the separate deduction for vehicle "Operating Costs," which include payments for "[v]ehicle insurance, . . . maintenance, fuel, state and local registration, required inspection,

parking fees, tolls, [and] driver's license." Internal Revenue Manual §§5.15.1.7 and 5.15.1.8 (May 1, 2004), reprinted in App. to Brief for Respondent 16a, 20a; see also IRS, Collection Financial Standards (Feb. 19, 2010), http://www.irs.gov/individuals/article/0,,id=96543,00.html.[6] A person who owns a car free and clear is entitled to claim the "Operating Costs" deduction for all these expenses of driving—and Ransom in fact did so, to the tune of $338. But such a person is not entitled to claim the "Ownership Costs" deduction, because that allowance is for the separate costs of a car loan or lease.

The Collection Financial Standards—the IRS's explanatory guidelines to the National and Local Standards—explicitly recognize this distinction between ownership and operating costs, making clear that individuals who have a car but make no loan or lease payments may claim only the operating allowance. App. to Brief for Respondent 3a; see *supra*, at 4. Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose—to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.[7]

_____

[6] In addition, the IRS has categorized taxes, including those associated with car ownership, as an "Other Necessary Expens[e]," for which a debtor may take a deduction. See App. to Brief for Respondent 26a; Brief for United States as *Amicus Curiae* 16, n. 4.

[7] Because the dissent appears to misunderstand our use of the Collection Financial Standards, and because it may be important for future cases to be clear on this point, we emphasize again that the statute

Opinion of the Court

Because Ransom owns his vehicle free and clear of any encumbrance, he incurs no expense in the "Ownership Costs" category of the Local Standards. Accordingly, the car-ownership expense amount is not "applicable" to him, and the Ninth Circuit correctly denied that deduction.

### III

Ransom's argument to the contrary relies on a different interpretation of the key word "applicable," an objection to our view of the scope of the "Ownership Costs" category, and a criticism of the policy implications of our approach. We do not think these claims persuasive.

### A

Ransom first offers another understanding of the term "applicable." A debtor, he says, determines his "applicable" deductions by locating the box in each National or Local Standard table that corresponds to his geographic location, income, family size, or number of cars. Under this approach, a debtor "consult[s] the table[s] alone" to determine his appropriate expense amounts. Reply Brief for Petitioner 16. Because he has one car, Ransom argues that his "applicable" allowance is the sum listed in the first column of the "Ownership Costs" table ($471); if he had a second vehicle, the amount in the second column ($332) would also be "applicable." On this approach, the word "applicable" serves a function wholly internal to the tables; rather than filtering out debtors for whom a deduction is not at all suitable, the term merely directs each

_____

does not "incorporat[e]" or otherwise "impor[t]" the IRS's guidance. *Post,* at 1, 4 (opinion of SCALIA, J.). The dissent questions what possible basis except incorporation could justify our consulting the IRS's view, *post*, at 4, n., but we think that basis obvious: The IRS *creates* the National and Local Standards referenced in the statute, revises them as it deems necessary, and uses them every day. The agency might, therefore, have something insightful and persuasive (albeit not controlling) to say about them.

debtor to the correct box (and associated dollar amount of deduction) within every table.

This alternative reading of "applicable" fails to comport with the statute's text, context, or purpose. As intimated earlier, *supra,* at 7–8, Ransom's interpretation would render the term "applicable" superfluous. Assume Congress had omitted that word and simply authorized a deduction of "the debtor's monthly expense amounts" specified in the Standards. That language, most naturally read, would direct each debtor to locate the box in every table corresponding to his location, income, family size, or number of cars and to deduct the amount stated. In other words, the language would instruct the debtor to use the exact approach Ransom urges. The word "applicable" is not necessary to accomplish that result; it is necessary only for the different purpose of dividing debtors eligible to make use of the tables from those who are not. Further, Ransom's reading of "applicable" would sever the connection between the means test and the statutory provision it is meant to implement—the authorization of an allowance for (but only for) "reasonably necessary" expenses. Expenses that are wholly fictional are not easily thought of as reasonably necessary. And finally, Ransom's interpretation would run counter to the statute's overall purpose of ensuring that debtors repay creditors to the extent they can—here, by shielding some $28,000 that he does not in fact need for loan or lease payments.

As against all this, Ransom argues that his reading is necessary to account for the means test's distinction between "applicable" and "actual" expenses—more fully stated, between the phrase "*applicable* monthly expense amounts" specified in the Standards and the phrase "*actual* monthly expenses for . . . Other Necessary Expenses." §707(b)(2)(A)(ii)(I) (emphasis added). The latter phrase enables a debtor to deduct his actual expenses in particular categories that the IRS designates relating mainly to

taxpayers' health and welfare.  Internal Revenue Manual §5.15.1.10(1), http://www.irs.gov/irm/part5/ irm_05-015-001.html#d0e1381.  According to Ransom, "applicable" cannot mean the same thing as "actual."  Brief for Petitioner 40.  He thus concludes that "an 'applicable' expense can be claimed [under the means test] even if no 'actual' expense was incurred." *Ibid.*

Our interpretation of the statute, however, equally avoids conflating "applicable" with "actual" costs.  Although the expense amounts in the Standards apply only if the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction.  If a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures.[8]  For the Other Necessary Expense categories, by contrast, the debtor may deduct his actual expenses, no matter how high they are.[9]  Our read-

_____

[8] The parties and the Solicitor General as *amicus curiae* dispute the proper deduction for a debtor who has expenses that are *lower* than the amounts listed in the Local Standards.  Ransom argues that a debtor may claim the specified expense amount in full regardless of his out-of-pocket costs.  Brief for Petitioner 24–27.  The Government concurs with this view, provided (as we require) that a debtor has *some* expense relating to the deduction.  See Brief for United States as *Amicus Curiae* 19–21.  FIA, relying on the IRS's practice, contends to the contrary that a debtor may claim only his actual expenditures in this circumstance.  Brief for Respondent 12, 45–46 (arguing that the Local Standards function as caps).  We decline to resolve this issue.  Because Ransom incurs no ownership expense at all, the car-ownership allowance is not applicable to him in the first instance.  Ransom is therefore not entitled to a deduction under either approach.

[9] For the same reason, the allowance for "applicable monthly expense amounts" at issue here differs from the additional allowances that the dissent cites for the deduction of actual expenditures.  See *post*, at 3–4 (noting allowances for "actual expenses" for care of an elderly or chronically ill household member, §707(b)(2)(A)(ii)(II), and for home energy costs, §707(b)(2)(A)(ii)(V)).

ing of the means test thus gives full effect to "the distinction between 'applicable' and 'actual' without taking a further step to conclude that 'applicable' means 'nonexistent.'" *In re Ross-Tousey*, 368 B. R. 762, 765 (Bkrtcy. Ct. ED Wis. 2007), rev'd, 549 F. 3d 1148 (CA7 2008).

Finally, Ransom's reading of "applicable" may not even answer the essential question: whether a debtor may claim a deduction. "[C]onsult[ing] the table[s] alone" to determine a debtor's deduction, as Ransom urges us to do, Reply Brief for Petitioner 16, often will not be sufficient because the tables are not self-defining. This case provides a prime example. The "Ownership Costs" table features two columns labeled "First Car" and "Second Car." See *supra*, at 4. Standing alone, the table does not specify whether it refers to the first and second cars *owned* (as Ransom avers), or the first and second cars for which the debtor incurs *ownership costs* (as FIA maintains)—and so the table does not resolve the issue in dispute.[10] See *In re Kimbro*, 389 B. R. 518, 533 (Bkrtcy. App. Panel CA6 2008) (Fulton, J., dissenting) ("[O]ne cannot really 'just

---

[10] The interpretive problem is not, as the dissent suggests, "whether to claim a deduction for one car or for two," *post,* at 3, but rather whether to claim a deduction for *any* car that is owned if the debtor has no ownership costs. Indeed, if we had to decide this question on the basis of the table alone, we might well decide that a debtor who does not make loan or lease payments cannot claim an allowance. The table, after all, is titled "Ownership *Costs*"—suggesting that it applies to those debtors who incur such costs. And as noted earlier, the dollar amounts in the table represent average automobile loan and lease payments nationwide (with all other car-related expenses approximated in the separate "Operating Costs" table). See *supra*, at 9–10. Ransom himself concedes that not every debtor falls within the terms of this table; he would exclude, and thus prohibit from taking a deduction, a person who does not own a car. Brief for Petitioner 33. In like manner, the four corners of the table appear to exclude an additional group—debtors like Ransom who own their cars free and clear and so do not make the loan or lease payments that constitute "Ownership Costs."

look up' dollar amounts in the tables without either refer-
ring to IRS guidelines for using the tables or imposing pre-
existing assumptions about how [they] are to be navi-
gated" (footnote omitted)). Some amount of interpretation
is necessary to decide what the deduction is for and
whether it is applicable to Ransom; and so we are brought
back full circle to our prior analysis.

B

Ransom next argues that viewing the car-ownership
deduction as covering no more than loan and lease pay-
ments is inconsistent with a separate sentence of the
means test that provides: "Notwithstanding any other
provision of this clause, the monthly expenses of the
debtor shall not include any payments for debts."
§707(b)(2)(A)(ii)(I). The car-ownership deduction cannot
comprise *only* loan and lease payments, Ransom contends,
because those payments are *always* debts. See Brief for
Petitioner 28, 44–45.

Ransom ignores that the "notwithstanding" sentence
governs the full panoply of deductions under the National
and Local Standards and the Other Necessary Expense
categories. We hesitate to rely on that general provision
to interpret the content of the car-ownership deduction
because Congress did not draft the former with the latter
specially in mind; any friction between the two likely
reflects only a lack of attention to how an across-the-board
exclusion of debt payments would correspond to a particu-
lar IRS allowance.[11] Further, the "notwithstanding" sen-
tence by its terms functions only to exclude, and not to
authorize, deductions. It cannot establish an allowance

––––––––––

[11] Because Ransom does not make payments on his car, we need not
and do not resolve how the "notwithstanding" sentence affects the
vehicle-ownership deduction when a debtor has a loan or lease expense.
See Brief for United States as *Amicus Curiae* 23, n. 5 (offering alterna-
tive views on this question); Tr. of Oral Arg. 51–52.

for non-loan or -lease ownership costs that no National or Local Standard covers. Accordingly, the "notwithstanding" sentence does nothing to alter our conclusion that the "Ownership Costs" table does not apply to a debtor whose car is not encumbered.

C

Ransom finally contends that his view of the means test is necessary to avoid senseless results not intended by Congress. At the outset, we note that the policy concerns Ransom emphasizes pale beside one his reading creates: His interpretation, as we have explained, would frustrate BAPCPA's core purpose of ensuring that debtors devote their full disposable income to repaying creditors. See *supra*, at 8–9. We nonetheless address each of Ransom's policy arguments in turn.

Ransom first points out a troubling anomaly: Under our interpretation, "[d]ebtors can time their bankruptcy filing to take place while they still have a few car payments left, thus retaining an ownership deduction which they would lose if they filed just after making their last payment." Brief for Petitioner 54. Indeed, a debtor with only a single car payment remaining, Ransom notes, is eligible to claim a monthly ownership deduction. *Id.,* at 15, 52.

But this kind of oddity is the inevitable result of a standardized formula like the means test, even more under Ransom's reading than under ours. Such formulas are by their nature over- and under-inclusive. In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces. And Ransom's alternative reading of the statute would spawn its own anomalies—even placing to one side the fundamental strangeness of giving a debtor an allowance for loan or lease payments when he has not a penny of loan or lease

costs.  On Ransom's view, for example, a debtor entering bankruptcy might purchase for a song a junkyard car—"an old, rusted pile of scrap metal [that would] si[t] on cinder blocks in his backyard," *In re Brown*, 376 B. R. 601, 607 (Bkrtcy. Ct. SD Tex. 2007)—in order to deduct the $471 car-ownership expense and reduce his payment to creditors by that amount.  We do not see why Congress would have preferred that result to the one that worries Ransom.  That is especially so because creditors may well be able to remedy Ransom's "one payment left" problem.  If car payments cease during the life of the plan, just as if other financial circumstances change, an unsecured creditor may move to modify the plan to increase the amount the debtor must repay.  See 11 U. S. C. §1329(a)(1).

Ransom next contends that denying the ownership allowance to debtors in his position "sends entirely the wrong message, namely, that it is advantageous to be deeply in debt on motor vehicle loans, rather than to pay them off."  Brief for Petitioner 55.  But the choice here is not between thrifty savers and profligate borrowers, as Ransom would have it.  Money is fungible: The $14,000 that Ransom spent to purchase his Camry outright was money he did not devote to paying down his credit card debt, and Congress did not express a preference for one use of these funds over the other.  Further, Ransom's argument mistakes what the deductions in the means test are meant to accomplish.  Rather than effecting any broad federal policy as to saving or borrowing, the deductions serve merely to ensure that debtors in bankruptcy can afford essential items.  The car-ownership allowance thus safeguards a debtor's ability to retain a car throughout the plan period.  If the debtor already owns a car outright, he has no need for this protection.

Ransom finally argues that a debtor who owns his car free and clear may need to replace it during the life of the plan; "[g]ranting the ownership cost deduction to a vehicle

that is owned outright," he states, "accords best with economic reality." *Id.,* at 52. In essence, Ransom seeks an emergency cushion for car owners. But nothing in the statute authorizes such a cushion, which all debtors presumably would like in the event some unexpected need arises. And a person who enters bankruptcy without any car at all may also have to buy one during the plan period; yet Ransom concedes that a person in this position cannot claim the ownership deduction. Tr. of Oral Arg. 20. The appropriate way to account for unanticipated expenses like a new vehicle purchase is not to distort the scope of a deduction, but to use the method that the Code provides for all Chapter 13 debtors (and their creditors): modification of the plan in light of changed circumstances. See §1329(a)(1); see also *supra*, at 17.

## IV

Based on BAPCPA's text, context, and purpose, we hold that the Local Standard expense amount for transportation "Ownership Costs" is not "applicable" to a debtor who will not incur any such costs during his bankruptcy plan. Because the "Ownership Costs" category covers only loan and lease payments and because Ransom owns his car free from any debt or obligation, he may not claim the allowance. In short, Ransom may not deduct loan or lease expenses when he does not have any. We therefore affirm the judgment of the Ninth Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–907

_____

## JASON M. RANSOM, PETITIONER *v.* FIA CARD SERVICES, N. A., FKA MBNA AMERICA BANK, N. A.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 11, 2011]

JUSTICE SCALIA, dissenting.

I would reverse the judgment of the Ninth Circuit. I agree with the conclusion of the three other Courts of Appeals to address the question: that a debtor who owns a car free and clear is entitled to the car-ownership allowance. See *In re Washburn,* 579 F. 3d 934 (CA8 2009); *In re Tate,* 571 F. 3d 423 (CA5 2009); *In re Ross-Tousey,* 549 F. 3d 1148 (CA7 2008).

The statutory text at issue is the phrase enacted in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), "applicable monthly expense amounts specified under the National Standards and Local Standards," 11 U. S. C. §707(b)(2)(A)(ii)(I). The Court holds that the word "applicable" in this provision imports into the Local Standards a directive in the Internal Revenue Service's Collection Financial Standards, which have as their stated purpose "to help determine a taxpayer's ability to pay a delinquent tax liability," App. to Brief for Respondent 1a. That directive says that "[i]f a taxpayer has no car payment," the Ownership Cost provisions of the Local Standards will not apply. *Id.*, at 3a.

That directive forms no part of the Local Standards to which the statute refers; and the fact that portions of the Local Standards are to be disregarded for revenue-

collection purposes says nothing about whether they are to be disregarded for purposes of Chapter 13 of the Bankruptcy Code. The Court believes, however, that unless the IRS's Collection Financial Standards are imported into the Local Standards, the word "applicable" would do no work, violating the principle that "'we must give effect to every word of a statute wherever possible.'" *Ante*, at 8 (quoting *Leocal* v. *Ashcroft*, 543 U. S. 1, 12 (2004)). I disagree. The canon against superfluity is not a canon against verbosity. When a thought could have been expressed more concisely, one does not always have to cast about for some additional meaning to the word or phrase that could have been dispensed with. This has always been understood. A House of Lords opinion holds, for example, that in the phrase "'in addition to and not in derogation of'" the last part adds nothing but emphasis. *Davies* v. *Powell Duffryn Associated Collieries, Ltd.*, [1942] A. C. 601, 607.

It seems to me that is the situation here. To be sure, one can say "according to the attached table"; but it is acceptable (and indeed I think more common) to say "according to the applicable provisions of the attached table." That seems to me the fairest reading of "applicable monthly expense amounts specified under the National Standards and Local Standards." That is especially so for the Ownership Costs portion of the Local Standards, which had no column titled "No Car." Here the expense amount would be that shown for one car (which is all the debtor here owned) rather than that shown for two cars; and it would be no expense amount if the debtor owned no car, since there is no "applicable" provision for that on the table. For operating and public transportation costs, the "applicable" amount would similarly be the amount provided by the Local Standards for the geographic region in which the debtor resides. (The debtor would not first be required to prove that he actually operates the cars that he owns, or, if does not own a car, that he actually uses

public transportation.) The Court claims that the tables "are not self-defining," and that "[s]ome amount of interpretation" is necessary in choosing whether to claim a deduction at all, for one car, or for two. *Ante*, at 14–15. But this problem seems to me more metaphysical than practical. The point of the statutory language is to entitle debtors who own cars to an ownership deduction, and I have little doubt that debtors will be able to choose correctly whether to claim a deduction for one car or for two.

If the meaning attributed to the word by the Court were intended, it would have been most precise to say "monthly expense amounts specified under the National Standards and Local Standards, if applicable for IRS collection purposes." And even if utter precision was too much to expect, it would at least have been more natural to say "monthly expense amounts specified under the National Standards and Local Standards, *if applicable*." That would make it clear that amounts specified under those Standards may nonetheless not be applicable, justifying (perhaps) resort to some source other than the Standards themselves to give meaning to the condition. The very next paragraph of the Bankruptcy Code uses that formulation ("if applicable") to limit to actual expenses the deduction for care of an elderly or chronically ill household member: "[T]he debtor's monthly expenses may include, *if applicable*, the continuation of actual expenses paid by the debtor that are reasonable and necessary" for that purpose. 11 U. S. C. §707(b)(2)(A)(ii)(II) (emphasis added).

Elsewhere as well, the Code makes it very clear when prescribed deductions are limited to actual expenditures. Section 707(b)(2)(A)(ii)(I) itself authorizes deductions for a host of expenses—health and disability insurance, for example—only to the extent that they are "actual . . . expenses" that are "reasonably necessary." Additional deductions for energy are allowed, but again only if they are "actual expenses" that are "reasonable and necessary."

§707(b)(2)(A)(ii)(V).  Given the clarity of those limitations to actual outlays, it seems strange for Congress to limit the car-ownership deduction to the somewhat peculiar category "cars subject to any amount whatever of outstanding indebtedness" by the mere word "applicable," meant as incorporation of a limitation that appears in instructions to IRS agents.*

I do not find the normal meaning of the text undermined by the fact that it produces a situation in which a debtor who owes no payments on his car nonetheless gets the operating-expense allowance.  For the Court's more strained interpretation still produces a situation in which a debtor who owes only a single remaining payment on his car gets the full allowance.  As for the Court's imagined horrible in which "a debtor entering bankruptcy might purchase for a song a junkyard car," *ante*, at 17: That is fairly matched by the imagined horrible that, under the Court's scheme, a debtor entering bankruptcy might purchase a junkyard car for a song plus a $10 promissory note payable over several years.  He would get the full ownership expense deduction.

Thus, the Court's interpretation does not, as promised,

---

*The Court protests that I misunderstand its use of the Collection Financial Standards.  Its opinion does not, it says, find them to be incorporated by the Bankruptcy Code; they simply "reinforc[e] our conclusion that . . . a debtor seeking to claim this deduction must make some loan or lease payments."  *Ante*, at 10.  True enough, the opinion says that the Bankruptcy Code "does not incorporate the IRS's guidelines," but it immediately continues that "courts may consult this material in interpreting the National and Local Standards" so long as it is not "at odds with the statutory language."  *Ibid*.  In the present context, the real-world difference between finding the guidelines incorporated and finding it appropriate to consult them escapes me, since I can imagine no basis for consulting them unless Congress meant them to be consulted, which would mean they are incorporated.  And without incorporation, they *are* at odds with the statutory language, which otherwise contains no hint that eligibility for a Car Ownership deduction requires anything other than ownership of a car.

maintain "the connection between the means test and the statutory provision it is meant to implement—the authorization of an allowance for (but only for) 'reasonably necessary' expenses," *ante*, at 12. Nor do I think this difficulty is eliminated by the *deus ex machina* of 11 U. S. C. §1329(a)(1), which according to the Court would allow an unsecured creditor to "move to modify the plan to increase the amount the debtor must repay," *ante*, at 17. Apart from the fact that, as a practical matter, the sums involved would hardly make this worth the legal costs, allowing such ongoing revisions of matters specifically covered by the rigid means test would return us to "the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses," *ante*, at 16. If the BAPCPA had thought such adjustments necessary, surely it would have taken the much simpler and more logical step of providing going in that the ownership expense allowance would apply only so long as monthly payments were due.

The reality is, to describe it in the Court's own terms, that occasional overallowance (or, for that matter, underallowance) "is the inevitable result of a standardized formula like the means test . . . . Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Ibid.* Our job, it seems to me, is not to eliminate or reduce those "oddit[ies]," *ibid.*, but to give the formula Congress adopted its fairest meaning. In my judgment the "applicable monthly expense amounts" for operating costs "specified under the . . . Local Standards," are the amounts specified in those Standards for either one car or two cars, whichever of those is applicable.