Ross **KRAMER** and Susan Kramer, Debtors.

Ross Kramer and Susan Kramer, Appellants,

v.

Carolyn A. Bankowski, Chapter 13 Trustee, Appellee.

BAP No. 13–037.
Bankruptcy No. 12–17674–FJB.

United States Bankruptcy Appellate Panel of the First Circuit.

March 3, 2014.

Robert W. Kovacs, Jr., Esq., on brief, Worcester, MA, for Appellants.

Carolyn A. Bankowski, Esq., and Patricia A. Remer, Esq., on brief for Appellee.

Before KORNREICH, TESTER, and FINKLE, United States Bankruptcy Appellate Panel Judges.

FINKLE, Bankruptcy Judge.

The debtors, Ross and Susan Kramer, appeal the bankruptcy court's order sustaining the objection of Carolyn A. Bankowski, chapter 13 trustee, to confirmation of their chapter 13 plan, and ordering the debtors to file an amended plan. For the reasons discussed below, the Panel **AFFIRMS.**

## *BACKGROUND*

### A. Factual Background

The material facts are undisputed. The debtors filed a chapter 13 petition in September 2012. At the time of the bankrupt-cy filing, the debtors owned real property encumbered by a first mortgage lien held by Everhome Mortgage Co., and a second mortgage lien held by Bank of America/Bank of New York Mellon ("Bank of America").

On their bankruptcy Schedules I and J, the debtors listed joint income of $9,302.48 and joint expenses of $8,102.56, leaving them "monthly net income" of $1,199.92. They did not list any expense related to the Bank of America mortgage on their Schedule J. In addition to Schedules I and J, the debtors were required to file a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), which indicated that they had above-median income—income greater than the state median income for a household of their size. As above-median income debtors they were required to complete Part IV of Form B22C, which calculated their allowable expense deductions from their income. Such "allowable" expenses for above-median income debtors are those expenses "reasonably necessary" as provided under § 707(b)(2)(A)-(B), the so-called "means test." In completing this section of the form, the debtors deducted $813.00 for monthly scheduled payments on the Bank of America mortgage. After applying their total allowable monthly expense deductions against their current monthly income, their "monthly disposable income" as reflected on Form B22C was $653.29.

In their chapter 13 plan, the debtors proposed to make monthly payments of $1,200.00 for 60 months, with a projected 24.59 percent dividend to general unsecured creditors. The debtors also proposed to continue making payments on the secured claims of Everhome Mortgage Co. (the first mortgagee) and Fifth Third Bank and Eastern Bank (each the holder of a

lien against a vehicle of the debtors). The plan further provided that Bank of America's second mortgage would be stripped off, regular payments on the mortgage loan would cease, and Bank of America would be treated entirely as a general unsecured creditor.

The chapter 13 trustee objected to confirmation of the plan, arguing that it did not meet the best efforts test required under § 1325(b)(1)(B).[1] According to the trustee, the debtors were not entitled to deduct the Bank of America mortgage payment when calculating their disposable income on Form B22C as they did not actually intend to make such payments under their chapter 13 plan. In response, the debtors asserted that although they were stripping off the mortgage and ceasing payments to Bank of America, they were entitled to deduct the second mortgage payment on their Form B22C according to the plain language of § 707(b)(2)(A)(iii)(I) because it was a payment "scheduled as contractually due" to a secured creditor. The debtors cited *Morse v. Rudler* (*In re Rudler*), 576 F.3d 37 (1st Cir.2009), in which the First Circuit held that a chapter 7 debtor is permitted to deduct mortgage payments under § 707(b)(2)(A)(iii)(I) when calculating disposable income on Form B22C for purposes of means testing, despite the fact that the debtor intended to surrender his home to the mortgagee and would not be making these payments. Moreover, the

debtors maintained that they were contributing their projected disposable income to their plan as required by § 1325(b)(1)(B), arriving at that figure by subtracting their monthly expenses listed on their Schedule J from their monthly income shown on their Schedule I. The debtors stressed that the resulting figure represented their true projected disposable income for plan purposes because they did not include the monthly mortgage payment to Bank of America as an expense on Schedule J. They further relied upon *In re Marshall*, 407 B.R. 1 (Bankr.D.Mass.2009), which extended the reasoning in *Rudler* to chapter 13 cases on facts similar to those here, allowing chapter 13 co-debtors to deduct payments on a mortgage they intended to strip off under their plan when determining projected disposable income pursuant to § 1325(b)(1)(B).

The bankruptcy court held a hearing on January 31, 2013. At the hearing, the debtors restated their argument that *Rudler*, as expanded by *Marshall*, permitted them to claim the mortgage expense on the Form B22C as a contractually due expense on a secured claim despite their intention to strip off Bank of America's lien. The trustee countered that the Supreme Court's rulings in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), and *Ransom v. FIA Card Servs., N.A.*, —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011),[2] overruled

---

**1.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

**2.** The Supreme Court held in *Lanning* that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually

certain at the time of confirmation." *Lanning*, 560 U.S. at 525, 130 S.Ct. 2464. In *Ransom*, the Supreme Court held that a chapter 13 debtor could not claim the statutory standard expense allowable for car ownership when in fact the debtor incurred no such expenses. *Ransom*, 131 S.Ct. at 721. The trustee contended that, taken together, these cases establish that the debtors in the case at hand were not entitled to claim a deduction from their projected disposable income for payments scheduled as contractually due to

*Marshall,* and that the majority of courts have agreed that under *Lanning* and *Ransom,* this type of expense is not an allowable deduction on the Form B22C when a debtor intends to strip off a lien securing a claim and treat the claim as unsecured.

## B.  The Bankruptcy Court's Decision

Ultimately, the bankruptcy court agreed with the trustee and concluded that the debtors were not contributing their projected disposable income to their plan, and on July 12, 2013, entered an order sustaining the trustee's objection and ordering the debtors to file an amended chapter 13 plan.  In its written decision, the bankruptcy court framed the issue as follows:

> Whether the Trustee's objection should be sustained turns on whether Debtors may deduct from their income their monthly mortgage payments to Bank of America under § 707(b)(2)(A)(iii)(I) as incorporated by § 1325(b), notwithstanding the Debtors' intent to treat Bank of America as an unsecured creditor under their plan.  Given the interrelation of § 1325 and § 707, the question of whether the Debtors should be permitted to claim this deduction implicates two distinct inquiries.  The first is whether the claimed deduction is allowable under the § 707 means test.  The second is whether the claimed deduction, even if so allowable, should be excluded from the Debtors' projected disposable income calculation under § 1325.  This Court holds that although the Debtors' deduction survives § 707 analysis, it must nevertheless be excluded under the forward-looking calculation of § 1325.

*In re Kramer,* 495 B.R. 121, 123–24 (Bankr.D.Mass.2013).

secured creditor Bank of America when the debtors did not intend to actually make those

With respect to the first inquiry, the bankruptcy court determined that, under the First Circuit's holding in *Rudler,* the debtors could claim a deduction for scheduled payments on their Bank of America mortgage under § 707(b)(2)(A)(iii)(I).  The bankruptcy court reasoned:

> [In *Rudler* ], the First Circuit sided with the vast majority of bankruptcy courts and held that the "plain language of section 707(b)(2) permits a Chapter 7 debtor to deduct payments on a secured debt even when the debtor plans to surrender the collateral underlying that debt." [*Rudler,* 576 F.3d] at 45.  While *Rudler* dealt with a planned surrender of collateral rather than the lien-stripping at issue in the instant case, "a determination that [a] claim is unsecured has the same practical effect as a surrender of property to a mortgagee. In both instances, debtors are no longer required to make monthly payments to secured creditors. Accordingly, the decisions involving surrender of secured property are apposite[.]" *In re Marshall,* 407 B.R. at 4. While the Debtors do not intend to make payments on their Bank of America mortgage loan under the plan, those payments remain scheduled as contractually due as of the bankruptcy filing.  The statute unambiguously indicates "that the debtor may deduct all payments owed at the time of the bankruptcy filing[.]" *Rudler,* 576 F.3d at 48.

*Id.* at 124.

In so holding, the bankruptcy court rejected the argument asserted by the trustee that the Supreme Court's decisions in *Lanning* and *Ransom* require a forward-looking analysis of the debtors' second mortgage payment for purposes of the

payments under their chapter 13 plan.

§ 707 means test. *Id.* The court noted that *Lanning*'s reasoning turned on the use of the word "projected" in the text of § 1325(b)(1)(B), holding that the presence of the word in the statute demanded a forward-looking approach to assessing a chapter 13 debtor's income. *Id.* at 125. According to the *Lanning* Court, the absence of that statutory language from § 707 indicates that a distinction should be made between the § 707 means test and the § 1325 analysis at issue in that case. *Id.* Thus, the bankruptcy court determined that *Lanning*'s forward-looking approach should be applied only to chapter 13 calculations of projected disposable income at the time of plan confirmation. *Id.* at 126.

With respect to the second inquiry, however, the bankruptcy court stated that "while § 707(b) permits the deduction claimed by the Debtors, *Lanning* requires the exclusion of the deduction at the level of the § 1325(b)(1) projected disposable income calculation." *Id.* The court explained:

> In chapter 13, courts must apply a forward-looking analysis. "[W]hen a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 130 S.Ct. at 2478. If the Debtor's plan is confirmed, the cessation of payments on the secured Bank of America loan will be certain at the time of confirmation, because it will be effected by the confirmation itself. This Court must take into account the fact that the proposed lien-stripping would substantially decrease the monthly expenses of the Debtors. Those savings should be made available to general unsecured creditors rather than accrue to the benefit of the Debtors. "[T]he deduction of mortgage expense from the Chapter 13 debtor's disposable income is not intended to enrich the debtor at the expense of his unsecured creditors." *In re Turner*, 574 F.3d 349, 356 (7th Cir. 2009). The Debtors' claimed deduction for those contractually scheduled payments that they will avoid under the proposed plan should therefore be excluded from the Debtors' projected disposable income under § 1325.

*Id.* at 125–26.

This appeal by the debtor followed.

## *JURISDICTION*

■ Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the litigants do not raise the issue. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A "decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* at 646–47 (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ The order sustaining the trustee's objection to the debtors' chapter 13 plan effectively denied confirmation of the plan without prejudice to the debtors filing an alternative plan. Such orders are interlocutory. *See Watson v. Boyajian (In re Watson)*, 309 B.R. 652, 659 (1st Cir. BAP 2004) (holding that order sustaining credi-

620

tor's objection to and denying confirmation of a chapter 13 plan is not a final order where the debtor is free to propose an alternate plan).

The debtors moved for leave to appeal, arguing that this case involves a controlling question of law because the bankruptcy court incorrectly determined that they are not permitted to deduct from their expenses on their Form B22C a mortgage loan which they proposed to strip off in their chapter 13 plan, and the Massachusetts bankruptcy courts are divided on the issue. Determining that the matter met the pertinent standards for interlocutory review, the Panel granted leave to appeal.

### STANDARD OF REVIEW

Appellate courts apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See Rockwood v. SKF USA Inc.,* 687 F.3d 1, 10 (1st Cir.2012) (citation omitted). The bankruptcy court's order was based on its determination that, as a matter of law, the debtors' plan could not be confirmed over the trustee's objection. The Panel, therefore, reviews the bankruptcy court's conclusion *de novo. Bullard v. Hyde Park Sav. Bank (In re Bullard),* 494 B.R. 92, 96 (1st Cir. BAP 2013) (citations omitted).

### DISCUSSION

Section 1325(b)(1)(B) provides that if a trustee or creditor objects to confirmation of a chapter 13 plan that does not provide for payment in full to unsecured creditors, the court may not confirm the plan unless it provides for "all of the debtor's projected disposable income to be received" during the term of the plan for distribution to creditors. 11 U.S.C. § 1325(b)(1)(B). This requirement in bankruptcy parlance is referred to as the "best efforts test" because it requires

chapter 13 debtors to devote all of their projected disposable income towards repayment of their creditors during the applicable mandated plan commitment period. For above-median income debtors who are not paying their creditors in full under the plan, that period is five years. *See* § 1325(b)(4)(A)(ii). "Projected disposable income" is not defined in the statute. However, § 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended ... for the maintenance and support of the debtor...." 11 U.S.C. § 1325(b)(2)(A)(i). The phrase "current monthly income" in turn is defined in § 101(10A) as a debtor's average monthly income for the six months immediately preceding the filing of the bankruptcy petition, which is the formula employed on Form B22C. 11 U.S.C. § 101(10A). For the above-median debtors in this case, "reasonably necessary" expenses are those allowable under the means test set forth in § 707(b)(2)(A)–(B), made applicable to chapter 13 by § 1325(b)(3). Such expenses include payments "scheduled as contractually due to secured creditors." 11 U.S.C. § 707(b)(2)(A)(iii)(I).

Since the enactment of BAPCPA, the question of how to calculate "projected disposable income" for above-median debtors has been the subject of much discussion. Many courts utilized a mechanical approach, determining monthly disposable income using the statutory formula set out in § 1325(b)(2), then multiplying ("projecting") that figure by the number of months in the proposed plan. *See, e.g., Maney v. Kagenveama (In re Kagenveama),* 541 F.3d 868 (9th Cir.2008); *In re Marshall,* 407 B.R. at 7 (citing cases within the First Circuit). This approach does not take into account any changes of a substantial certainty in income or expenses from those

listed on the Form B22C means test. And post-*Lanning*, this mechanical approach is no longer viable.

The debtor in *Lanning* included on her Form B22C a one-time payment of a "buy-out" from her former employer which greatly inflated the debtor's "disposable income" for the means test calculation. When calculating projected disposable income, the debtor omitted the buy-out payment received pre-petition, reporting lower income on Form B22C than she had actually received during the six months prior to her petition filing (the statutory look-back period under the means test). Thus, she reported correspondingly lower projected monthly disposable income to be committed to her plan. The trustee objected to confirmation of the plan on the grounds that the debtor failed to include all projected disposable income in the plan.

■ The Supreme Court held that "projecting" disposable income is a forward-looking concept, so a court may take into account changes in a debtor's income or expenses from those used in the means test, provided that the changes are known or virtually certain to occur. Thus, in determining projected monthly disposable income, the court "should begin by calculating disposable income" under the statutory formula (income received six months prior to filing) and, for above-median-income debtors, the allowable expenses under the Internal Revenue Service ("IRS") standards. 560 U.S. at 519, 130 S.Ct. 2464. In most cases, the *Lanning* Court explained, "nothing more is required." *Id.* However, "in unusual cases ... a court may go further and take into account other known or virtually certain information

about the debtor's future income or expenses." *Id.* (footnote omitted). Thus, "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524.

Pursuant to *Lanning*, the bankruptcy court determined that, given the interrelation of § 1325 and § 707, the question of whether the debtors should be permitted to claim a deduction for the monthly payment on the stripped off Bank of America mortgage raised two questions: (1) whether the claimed deduction is allowable under the § 707 means test; and (2) whether the claimed deduction, even if so allowable, should be excluded from the debtors' projected disposable income calculation under § 1325. The bankruptcy court found that while § 707(b)(2)(A)(iii)(I) allows the monthly payment of a stripped mortgage to be deducted in Part IV of Form B22C, under the forward-looking approach set forth in *Lanning*, the monthly payment for a stripped mortgage may not be deducted when calculating projected disposable income for purposes of § 1325(b)(1)(B).

Not surprising, the debtors do not challenge the bankruptcy court's determination that their claimed deduction for the Bank of America mortgage payments was allowed under § 707(b)(2)(A)(iii)(I) as payments "contractually due" to a secured creditor.[3] Nor do they dispute that *Lanning* requires a forward-looking approach to determining projected disposable income under § 1325(b)(1). The debtors contend, however, that the bankruptcy court erred by accounting for the known

---

**3.** Although the trustee continued to argue in her brief that the debtors were prohibited from claiming a deduction for the Bank of America mortgage payments on their Form B22C, the issue is not before the Panel as the debtors do not challenge the bankruptcy court's determination with respect to this issue and the trustee did not file a cross-appeal as to the issue. Moreover, the trustee did not address it at oral argument.

change to income when calculating their disposable income, rather than applying the known change when calculating projected disposable income. According to the debtors, "disposable income" is calculated on Form B22C, whereas "projected disposable income" is calculated using Schedules I and J, which in their case reflected "monthly net income" of $1,199.92. The debtors further protest that because they did not include the $813.00 Bank of America mortgage payment on their Schedule J, they properly accounted for this known expense change as required by *Lanning*. According to the debtors, their projected disposable income was $1,199.92 (as reflected on Schedule J), and because they were committing $1,200.00 each month to their plan, their plan satisfied the best efforts test and the bankruptcy court erred in denying confirmation.

In support of this argument the debtors continue to cite to *Rudler* and *Marshall, supra.* In a recent decision, Judge Hoffman, considering the identical issue to the one in dispute here, adopted Judge Bailey's reasoning in *Kramer. See In re Garrepy,* 501 B.R. 13, 16 (Bankr.D.Mass.2013). He concluded that "*Lanning* was a game-changer and cases such as *Marshall,* which predate *Lanning,* no longer provide the support the [debtors] seek." *Id.* According to Judge Hoffman, simply "[s]ubtracting schedule J expenses from schedule I income in order to determine projected disposable income, as the [debtors] propose, was the common practice prior to the enactment of" BAPCPA. *Id.* "But this practice was superseded by BAPCPA's changes to § 1325(b)." "Post–BAPCPA, a court may deviate from the amount reflected in a debtor's Form B22C when calculating projected disposable income in 'unusual cases' where a debtor presents 'known or virtually certain information about ... future income or expenses.'" *Id.*

(quoting *Lanning,* 560 U.S. at 519, 130 S.Ct. 2464).

The Panel agrees that *Lanning* was a "game-changer" and that cases such as *Marshall,* which predate *Lanning,* can no longer be relied upon by above-median chapter 13 debtors in an effort to take advantage of higher expense amounts listed on Schedule J than allowable under the means test on Form B22C. In this instance, the differential is approximately $266.00 per month when taking into account the elimination of the Bank of America mortgage expense. What the debtors fail to recognize is that post-*Lanning,* the starting point for determining projected disposable income for above-median debtors is not the "net monthly income" calculated on Schedule J, but the "disposable income" calculated on Form B22C under the statutory formula. Indeed, the debtors were unable to provide statutory or other suitable justification for diverging from the IRS expense standards imposed upon above-median income debtors. In the absence of any known changes to income or expenses, the inquiry would end there. However, as *Lanning* instructs, if there are known or virtually certain changes to income or expenses, the court may account for those changes when calculating projected disposable income for purposes of § 1325(b)(1)(B).

The disposable income figure calculated by the debtors on their Form B22C is $653.29 per month. However, with the strip off of the Bank of America mortgage, it is virtually certain that the debtors will no longer incur this monthly expense under the plan. Consequently, applying the forward-looking approach of *Lanning,* this elimination of the $813.00 mortgage expense must be accounted for when calculating the debtors' *projected disposable income* for purposes of § 1325(b)(1)(B). Thus, the disposable income figure set forth on their Form B22C must be adjust-

ed upward from $653.29 to $1,466.29 by adding back the $813.00 expense they will no longer have to pay. Thus, the debtors' projected disposable income for purposes of § 1325(b)(1)(B) was $1,466.29 per month, $266.29 more than their proposed plan payment of $1,200.00 the debtors derived by reverting to Schedules I and J instead of applying the necessary adjustment to the disposable income figure listed on their Form B22C. The debtors' plan did not include all of their projected disposable income, hence, it did not meet the best efforts test of § 1325(b)(1)(B).

## CONCLUSION

For the reasons set forth above, the Panel **AFFIRMS** the bankruptcy court's order sustaining the trustee's objection to plan confirmation.