## IN RE: Bruce Keith FEAGAN, Debtor.

### Case No. 15–40823–pwb

United States Bankruptcy Court,
N.D. Georgia, Rome Division.

Signed April 8, 2016

Filed April 11, 2016

W. Jeremy Salter, Salter & Salter PC, Rome, GA, for Debtor.

## ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION

Paul W. Bonapfel, U.S. Bankruptcy Court Judge

The issue in this case is whether an "above-median" Chapter 13 debtor with car payments on account of a nonpurchase-money debt may deduct the Ownership Costs allowance for purposes of calculating his projected disposable income ("PDF") under 11 U.S.C. § 1325(b). The Court concludes that the allowance is applicable regardless of the type of debt that encumbers a vehicle.

The projected disposable income test of 11 U.S.C. § 1325(b) prohibits confirmation of a Chapter 13 plan that does not provide for payment of allowed unsecured claims in full if the Chapter 13 trustee or an unsecured creditor objects, unless the plan provides for the payment to unsecured creditors of the debtor's PDI to be received over the "applicable commitment period" ("ACP"). 11 U.S.C. § 1325(b)(1).

Because the Second Amended Chapter 13 Plan (the "Plan") of Bruce Keith Feagan does not provide for full payment of

claims and the Chapter 13 Trustee's objection raises the PRI issue, the PDI test applies. Whether the Plan meets the PDI requirement depends on whether Mr. Feagan may deduct the Ownership Costs allowance.

Bruce Keith Feagan is a Chapter 13 debtor whose "current monthly income," 11 U.S.C. § 101(10A), exceeds the median family income in Georgia for a household of the same size as his. Because Mr. Feagan is an "above-median" debtor, his ACP is 60 months,[1] and he must calculate his PDI in accordance with the so-called "means test" standards of 11 U.S.C. § 707(b)(2)(A) and (B).[2]

Section 707(b)(2)(A)(ii)(I) states some of the expenses that a debtor may deduct from current monthly income to determine his PDI. It permits deduction of "applicable monthly expense amounts specified under the National Standards and Local Standards ... issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(i)(I).[3] One of the IRS Local Standards for Transportation permits an "Ownership Costs" deduction that the parties agree is $ 517.[4]

In calculating his PDI, Mr. Feagan claimed this $ 517 deduction with regard to a car that is the subject of a "title pawn" transaction on which $ 3,085.16 is due.

To retain his car, the parties agree, the plan must provide for payment of $ 51.43 per month to the pawnbroker, who has not objected to confirmation of the plan. Mr. Feagan is entitled to deduct this amount

as the average monthly payment on account of a secured debt under § 707(b)(2)(A)(iii).[5] Because § 707(b)(2)(A)(ii)(I), which permits the Ownership Costs deduction, does not permit a deduction for payments for debt, and to avoid duplicative deductions, Mr. Feagan must reduce the Ownership Costs deduction by the amount of the secured debt payment. Accordingly, the net effect of Mr. Feagan's Ownership Costs deduction is a reduction of his PDI by $ 465.57 ($ 517 - $ 51.43 = $ 465.57).

Mr. Feagan's monthly PDI, after the Ownership Costs deduction, is $ 153.63. His plan provides for payment of $ 9,250 to unsecured creditors through payments over 60 months. If Mr. Feagan is entitled to the Ownership Costs deduction, his plan satisfies the PDI test because the PDI test requires him to pay only $9, 217.80 (60 × $ 153.63 = $ 9,217.80).

The Chapter 13 Trustee contends that the Ownership Costs deduction is available only when a debtor has a car payment for a purchase-money debt or for a lease. Because Mr. Feagan did not incur the title-pawn obligation to purchase or lease the car, the Trustee argues, the deduction does not apply.

If Mr. Feagan cannot claim the Ownership Costs deduction, his monthly PDI must be increased by $ 465.57, resulting in a total monthly PDI of $ 619.20 ($ 153.63 + $ 465.57 = $ 619.20). Unsecured creditors must receive $ 37,152 (60 × $ 619.20 = $ 37,152). This amount is less than the

---

1. 11 U.S.C. § 1325(b)(4).

2. 11 U.S.C § 1325(b)(3).

3. *See generally* W. Homer Drake, Jr., et al, *Chapter 13 Practice and Procedure*, § 8:40.

4. See IRS Local Transportation Expenses Standards—South Census Region, for cases

filed between April 1, 2015, and May 14, 2015, available at *https://www.justice.gov/ust/ eo/bapcpa/20150401/bci_data/IRS_Trans_Exp_ Stds_SO.htm* (last visited April 5, 2016).

5. 11 U.S.C. § 707(b)(2)(A)(i) permits deduction of amounts determined under § 707(b)(2)(A)(iii).

approximately $ 37,152, the sum of the general unsecured and priority claims that have been filed.

The Supreme Court addressed the Ownership Costs deduction for purposes of the PDI test in *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). There, the debtor claimed the deduction for a car that he owned free and clear. The Court held that "the text, context, and purpose" of the statutory provision prevented a debtor "who does not make loan or lease payments" from taking the deduction. *Id.* at 64, 131 S.Ct. at 721.

Noting that § 707(b)(2)(A)(ii)(I) provides that "the debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the … Local Standards," the *Ransom* Court focused on "applicable" as the key word in the statutory language. 562 U.S. at 69, 131 S.Ct. at 724. Based on dictionary definitions, the Court concluded that an expense is "applicable" within the plain meaning of the statute "when it is appropriate, relevant, suitable or fit." *Id.*

The Court continued its analysis, 562 U.S. at 69–70, 131 S.Ct. at 724 (original punctuation and emphasis):

> What makes an expense amount "applicable" in this sense (appropriate, relevant, suitable, or fit) is most naturally understood to be its correspondence to an individual debtor's financial circumstances. Rather than authorizing all debtors to take deductions in all listed categories, Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if, but only if, that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to

the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to "*the debtor's* applicable monthly expense amounts. § 707(b)(2)(A)(ii)(I) (emphasis added)— in other words, the expense amounts applicable (appropriate, etc.) to each particular debtor. Identifying these amounts requires looking at the financial situation of the debtor and asking whether a National or Local Standard table is relevant to him.

The *Ransom* Court found support for this conclusion in the statutory context. The Court observed that the PDI test defines PDI by reference to "amounts reasonably necessary to be expended," § 1325(b)(2), and requires those expenditures to be determined in accordance with the means test standards in the case of an above-median debtor, § 1325(b)(3). 562 U.S. at 70, 131 S.Ct. at 724–25.

Because Congress intended the means test "to approximate the debtor's reasonable expenditures on essential items," the Court explained, "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." 562 U.S. at 70, 131 S.Ct. at 725. The Court summarized, *id.* at 70–71, 131 S.Ct. at 725:

> If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning of the statute.

Finally, the *Ransom* Court stated, "[C]onsideration of BAPCPA's purpose strengthens our reading of the term 'applicable.' " 562 U.S. at 71, 131 S.Ct. 716.[6]

---

6. BAPCPA is the acronym for the Bankruptcy

Abuse Prevention and Consumer Protection

Quoting a House Report, the Court explained, "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford." *Id.* Thus, the Court determined, "Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives." *Id.*

Having determined that a debtor must have some expense falling within the Ownership Costs category in order to claim its deduction, the *Ransom* Court continued, the question becomes: "What expenses does the vehicle-ownership category cover?" *Id.* The Court noted two possible understandings of what the category covers, *id.*:

> If it covers loan and lease payments alone, [the debtor] does not qualify, because he has no such expense. Only if that category also covers other costs associated with having a car would [the debtor] be entitled to this deduction.

The Court ruled, "The less inclusive understanding is the right one: The ownership category encompasses the costs of a car loan or lease and nothing more." 562 U.S. at 71, 131 S.Ct. at 725.

To support this conclusion, the Supreme Court noted that the amounts stated in the ownership costs table are based "on the five-year average of new and used car financing data compiled by the Federal Reserve Board." *Id.*[7] "In other words," the Court continued, "the [amount allowed] is the average monthly payment for loans and leases nationwide; it is not intended to estimate other conceivable expenses associated with maintaining a car." *Id.* at 72, 131 S.Ct. at 725.

The IRS Standards account for additional expenses, the Court continued, in the separate deduction for Operating Costs. Citing sections 5.15.1.7 and 5.15.1.9 of the Internal Revenue Manual (May 1, 2004), the Court observed that the Operating Costs category included payments for vehicle insurance, maintenance, fuel, state and local registration, required inspection, parking fees, tolls, and driver's license. *Id.*

The *Ransom* Court then observed that the Collection Financial Standards (which it described as the IRS's "explanatory guidelines" to the National and Local

---

Act of 2005, which the *Ransom* Court discussed earlier in its opinion. 562 U.S. at 64–67, 131 S.Ct. at 721–23. BAPCPA introduced the means test and changed the PDI test in Chapter 13 cases to apply means test standards to determination of PDI for above-median debtors. The Court stated that Congress adopted the means test, which legislative history states is the "heart" of BAPCPA's consumer bankruptcy reforms, "to help ensure that debtors who *can* pay creditors *do* pay them." *Id.* at 64, 131 S.Ct. at 721 (*citing* H.R.Rep. No. 109–31, pt 1, p. 2 (2005) (emphasis in original)).

7. The *Ransom* Court quoted this language and cited the Appendix to the Brief for Respondent at 3a as its source. That Appendix sets forth the "Collection Financial Standards" of the IRS. The quoted language appears under the heading "Recent Revisions,"

which notes that the Local Standards for housing and utilities and transportation were revised on February 1, 2006, to base ownership/leasing costs on Federal Reserve data as stated in the text.

The current Collection Financial Standards do not contain this language and do not state the basis for determination of the ownership amounts in the Local Standards for Transportation. In contrast, the Collection Financial Standards do state the sources for National Standards for Food, Clothing, and Other Items and for Out–of–Pocket Health Care Expenses, for Local Standards for Housing and Utilities; and for the public transportation amounts that are part of the Local Standards for Transportation. https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Collection-Financial-Standards.

Standards) "explicitly recognize" a distinction between ownership and operating costs, "making clear that individuals who have a car but make no loan or lease payments may claim only the operating allowance." 562 U.S. at 72, 131 S.Ct. at 726. Reference to the IRS material, the Court explained, is appropriate, *id.*:

> Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose—to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language.

*Ransom* did not address the issue here: whether the Ownership Costs category covers expenses for payment of an encumbrance on a vehicle that is not a purchase-money debt. Nevertheless, its statutory interpretation governs the answer.

*Ransom* establishes that a debtor must have an expense within the Ownership Costs category in order for the category to be "applicable" under the statutory language of § 707(a)(2)(B)(ii)(I). And this Court must answer the same question that the *Ransom* Court asked: "What expenses does the vehicle-ownership category cover?"

The *Ransom* Court's answer is that the Ownership Costs category "encompasses the costs of a car loan or lease and nothing more." *Ransom*, 562 U.S. at 71, 131 S.Ct. at 726. Does the Court's ruling resolve the question here?

The *Ransom* Court noted that the IRS Collection Financial Standards base the

amounts on new and used car financing data as compiled by the Federal Reserve. Because "financing" a car implies providing the money for its acquisition, *Ransom* might be read as requiring the conclusion that payments on a nonpurchase-money obligation are outside the category.

In the sentence following this statement, however, the *Ransom* Court stated that the amount of the Ownership Costs deduction is "the average monthly payment for loans and leases nationwide." Throughout the opinion, repeatedly and consistently, the Supreme Court referred to "loan or lease" payments, "costs of a car loan or lease," or "loan or lease costs;" nowhere did the Court state that, to qualify for the deduction, payments had to be a purchase-money debt.

Moreover, the Court in the same discussion distinguished car ownership expenses from other expenses of maintaining a car, which the Operating Costs allowance accounts for. The Operating Costs allowance obviously does not account for any payments for loans and leases. Logically, if costs associated with owning and operating a car are in one category or the other,[8] payments on a nonpurchase-money obligation must be in the Ownership Costs category.

Based on these observations, *Ransom* could require a conclusion that a debtor who must pay a nonpurchase-money obligation to retain a car has an expense within the Ownership Costs category and that, therefore, the category is "applicable" to him under the statutory language of § 707(b)(2)(B)(i)(I).

---

**8.** Ownership Costs do not include ad valorem taxes, but they are covered as an "Other Expense". IRS Financial Analysis Handbook § 5.15.1.10. The Financial Analysis Handbook is Section 1 of Chapter 15 (Financial Analysis) of Part 5 (Collecting Process) of the Internal Revenue Manual. Section 707(b)(2)(B)(i)(I) permits deduction of Other Expenses.

Either argument is sensible. Because the question of whether the Operating Costs category covers nonpurchase-money obligations was not before the *Ransom* Court, however, the language it used to describe what the category covers does not control the issue one way or another. The Supreme Court discussed only the issue before it; if the Court thought that it was addressing this issue, nothing in the opinion makes that clear.

What *Ransom* does make clear is that courts may consult IRS material in interpreting the National and Local Standards. It would be helpful if the IRS Standards and interpretive material definitively answered the question, but they do not.

The statements in the IRS material that are relevant to the inquiry appear to be the following. Emphasis is added in each one.

The IRS Local Standards for Transportation state: [9]

The transportation standards for taxpayers with a vehicle consist of two parts: nationwide figures for **monthly loan or lease payments** referred to as ownership costs, and additional amounts for monthly operating costs. The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls (These standard amounts do not include personal property taxes).

The Local Standard also states the following: [10]

The ownership costs ... provide the **monthly allowances for the lease or purchase** of up to two automobiles. A single taxpayer is normally allowed one automobile. For each automobile, taxpayers will be allowed the lesser of:

1.  **the monthly payment on the lease or car loan,** or

2.  the ownership costs shown in the table below.

The Internal Revenue Service maintains a Manual, which includes a "Financial Analysis Handbook" [11] as Section 1 of Chapter 15 (Financial Analysis) of Part 5 (Collecting Process). Section 5.15.1.9 (Nov. 17, 2014), titled "Local Standards" states in pertinent part:

1.  Local standards include the following expenses:

. . .

B. **Transportation**—This includes vehicle insurance, **vehicle payment (lease or purchase),** required inspection, parking fees, tolls, driver's license and public transportation.

Paragraphs 1, 2 and 3 of Section 5.8.5.22.3 of the IRS Manual (included in Section 5 (Financial Analysis) of Chapter 8 (Offer in Compromise) of Part 5 (Collecting Process)) state: [12]

1. Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income. Employees investigating OICs are expected to exercise appropriate judgment in determining whether claimed transportation expenses meet these standards. Expenses that appear excessive should be ques-

**9.** Local Standards: Transportation, IRS (last updated Mar. 28, 2016), https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Local-Standards-Transportation (last visited April 5, 2016).

**10.** Id.

**11.** https://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1447 (last visited April 5, 2016).

**12.** https://www.irs.gov/irm/part5/irm_05-008-005r.html#d0e1914 (last visited April 5, 2016).

tioned and, in appropriate situations, disallowed.

2. The transportation standards consist of nationwide figures **for loan or lease payments** referred to as ownership costs and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area. Operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls.

3. Ownership Expenses—Expenses are allowed for purchase or lease of a vehicle. Taxpayers will be allowed the local standard or the amount actually paid, whichever is less, unless the taxpayer provides documentation to verify and substantiate that the higher expenses are necessary.

The Financial Analysis Handbook begins with Section 5.15.1.1, titled "Overview and Expectations."[13] Paragraphs 1, 6, and 7 of this section state the following:

1. This IRM provides instructions for securing, verifying and analyzing financial information. This analysis provides the basis for determining a taxpayer's ability to pay delinquent tax liabilities, which enables Collection employees to make appropriate collection decisions to resolve cases.

6. The Allowable Living Expense (ALE) Standards, also known as the Collection Financial Standards, include national and local standards, which are guidelines established by the Service to provide consistency in certain expense allowances such as food and household expenses, medical expenses, housing and transportation. Reference to these standards will be found throughout this section. . . .

7. The standard amounts set forth in the national and local guidelines are designed to account for basic living expenses. In some cases, based on a taxpayer's individual facts and circumstances, it will be appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship (See IRM 5.15.1.1(8)). The taxpayer must provide reasonable substantiation of all expenses claimed that exceed the standard amount.

A review of these parts of the IRS statements on the subject reveals that, in some places, the materials describe Ownership Costs as "monthly loan or lease payments." In other places, the materials refer to Operating Costs as "monthly allowances for the lease or purchase" of automobiles or a "vehicle payment (lease or purchase)."

So how does an IRS employee decide whether payments on a nonpurchase-money obligation are allowable as an Ownership Cost? Perhaps the employee consults a lawyer who parses the language of the text as a matter of statutory construction and applies various maxims to conclude that the specific references to the "lease or purchase" of a vehicle require a conclusion that nonpurchase-money obligations are excluded.

In this Court's judgment, the IRS Standards and interpretive materials should not be interpreted in the way that courts and lawyers read statutes. The reason is that, unlike statutes in general and the provisions of the means test in particular, the IRS interpretive materials and the Standards themselves do not establish mandatory rules that IRS employees must follow.

The Financial Analysis Handbook makes this clear in paragraph 6 of § 5.15.1.1 of

**13.** https://www.irs.gov/irm/part5/irm 05–015– 001.html#d0e95 (last visited April 5, 2016).

the Financial Analysis Handbook, quoted above. The section is titled, "Overview and Expectations," and paragraph 6 states in pertinent part, "the Collection Financial Standards include national and local standards, *which are guidelines established by the Service to provide consistency in certain expense allowances* such as food and household expenses, medical expenses, housing and transportation." (Emphasis added). Paragraph 7 of § 5.15.1.1 similarly refers to the standard amounts as "national and local *guidelines.*" (Emphasis added).

Furthermore, the IRS does not expect mandatory compliance with the Standards—i.e., the "guideline"—in all cases. Paragraph 7 of § 5.15.1.1 states that it is "appropriate to deviate from the standard amount when failure to do so will cause the taxpayer economic hardship" and permits allowance of expenses that exceed the standard amount if the taxpayer provides reasonable substantiation. Paragraphs 1 and 3 of § 5.8.5.22.3 of the IRS Manual (included in Section 5 (Financial Analysis) of Chapter 8 (Offer in Compromise) of Part 5 (Collecting Process), quoted above, likewise permit allowance of transportation expenses that exceed the Standard.

With regard to allowance of transportation expenses, paragraph 1 of Section 5.8.5.22.3 of the IRS Manual (included in Section 5 (Financial Analysis) of Chapter 8 (Offer in Compromise) of Part 5 (Collecting Process)) states:

> Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income. Employees inves-

tigating [Offers in Compromise] are expected to exercise appropriate judgment in determining whether claimed transportation expenses meet these standards.

If a taxpayer needs a car, it matters not whether payments necessary to retain it are for a loan to finance its acquisition or a nonpurchase-money obligation. "Appropriate judgment" of an IRS employee surely includes the realization that the nature of the encumbrance makes no difference and the common sense conclusion that the Ownership Costs category includes it.

Based on its review of the IRS Standards and interpretive materials quoted and discussed above, the Court concludes that the Ownership Costs deduction is available when the encumbrance arises from a nonpurchase-money obligation.[14] The category is, therefore, "applicable" in this case as a permissible deduction under § 707(b)(2)(A)(i)(I). *Accord, In re Brunck,* 2016 WL 770571 at *3 (Bankr.S.D.Ind. Feb. 24, 2016) ("Whether the obligation secured by a vehicle has its origin in a purchase-money loan or a title loan is irrelevant to the debtors' ability to retain a car throughout the plan period.... The [debtors] have a car loan which, regardless of its origin, now constitutes a legitimate ownership expense").

The Court recognizes that other courts have reached a contrary conclusion. *In re Sires,* 511 B.R. 719 (Bankr.S.D.Ga.2014); *In re King,* 497 B.R. 161 (Bankr.N.D.Ga. 2013); *In re Carroll,* 2013 Bankr.LEXIS 3072 (Bankr.D.Idaho 2013); *In re Alexander,* 2012 WL 3156760 (Bankr.W.D.Mo. 2012). These cases rely on the fact that

---

**14.** The Court notes that a debtor in anticipation of the filing of a bankruptcy case could encumber a vehicle for the purpose of invoking the Ownership Costs deduction to create a reduction in his means test income (in a Chapter 7 case) or his PDI (in a Chapter 13 case). The Trustee in this case has not suggested that Mr. Feagan abused the bankruptcy system in such a manner.

the Internal Revenue Service states that the allowance for the Ownership Costs deduction is based on ownership costs that are for "loan or lease" payments relating to the "purchase or lease" of a vehicle. The Court respectfully disagrees with the reasoning of these cases for the reasons set forth above.

The Court's ruling permits Mr. Feagan to deduct an amount based on his ownership of an encumbered car that is more than the amount he actually must pay to retain it. This result is seemingly at odds with the Congressional purpose of the means test and PDI provisions that, as the *Ransom* Court recognized, is "to ensure that [debtors] repay creditors the maximum they can afford." 562 U.S. at 71, 131 S.Ct. at 725.

The same consequence occurs, however, when a debtor's car payment with regard to a purchase-money debt is less than the amount that the Ownership Costs Standard permits. The question whether a debtor may claim the full Ownership Costs deduction when his car payment is less than the amount it allows has divided the lower courts.[15] The *Ransom* Court noted, but declined to resolve, the issue. 562 U.S. at 76 n. 8, 131 S.Ct. at 727.

The Chapter 13 Trustee has not asserted that position in this case. So the issue here is whether the Ownership Costs Standard—and by extension the PDI test—treats car payments differently depending on whether the car is encumbered by a nonpurchase-money obligation.

In considering Congressional purpose in the context of that issue, the proper focus is not on the Congressional intent to make a debtor pay the maximum he can afford. Rather, the inquiry properly focuses on the intent to establish a formula to determine "amounts reasonably necessary to be expended" for purposes of the PDI test. *See Ransom*, 562 U.S. at 65, 131 S.Ct. at 721–22. The *Ransom* Court observed that BAPCPA's means test provisions supplanted pre-BAPCPA practice that calculated reasonable expenses on a case-by-case basis, with "varying and often inconsistent determinations." *Id.*

Congress defined categories of reasonable expenses. One of them is an allowance for Ownership Costs that is applicable to a debtor with a car payment. The purpose of that must be to permit the debtor to keep the car so that he has necessary transportation. To accomplish that objective, it makes no difference whether the debt is purchase-money or non-purchase money—the debtor must make the car payments to keep the car. If Congressional purpose is relevant to determination of the question at all, treating both types of encumbrances the same way furthers the Congressional purpose of permitting a debtor's retention of an encumbered car.

Based on, and in accordance with, the foregoing, it is hereby **ORDERED** that the Chapter 13 Trustee's objection be, and it hereby is, **OVERRULED** and that the Debtor's Second Amended Chapter 13 Plan [26] be confirmed. The Court will enter a separate order confirming the Plan.

**IT IS ORDERED.**

---

15. See W. Homer Drake, Jr., *Chapter 13 Practice and Procedure* § 8:33.