**In the Matter of Gary Thomas KING, Debtor.**

**No. 13–10689–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

June 26, 2013.

Adam M. Goodman, Chapter 13 Trustee, Atlanta, GA, Trustee.

Michael Gorove, Harmon & Gorove, Newnan, GA, for Debtor.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the confirmation of a Chapter 13 Plan (hereinafter the "Plan"), proposed by Gary Thomas King (hereinafter the "Debtor"). The Chapter 13 Trustee (hereinafter the "Trustee") objects to confirmation on the basis that the Debtor has not included all of his projected disposable income into the Plan. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (L); § 1334.

### OVERVIEW.

The parties request the Court's determination as to a question [1] left unresolved by the Supreme Court's opinion in *Ransom v. FIA Card Serv., N.A.,* —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011)—whether a debtor's calculation of his disposable income may incorporate the deduction of an "ownership expense" in an automobile, which is secured by a loan wholly unrelated to the automobile's acquisition? For the reasons set forth in this opinion, the Court joins what appears to be the only other two courts to have addressed this issue in holding that a debtor may not claim such a deduction in his disposable income calculation. *See In re Alexander,* 2012 WL 3156760 (Bankr.W.D.Mo.2012); *In re Carroll,* Case No. 12–41350–JDP, slip op. (Bankr.Idaho April 15, 2013).

### PROCEDURAL HISTORY AND STATEMENT OF FACTS.

The Debtor commenced this bankruptcy proceeding under Chapter 13 of the United

---

1. The Court is aware that there are other remaining objections to the Debtor's Chapter 13 Plan, but the Court authorized the briefing of the single issue addressed in this Order.

States Bankruptcy Code[2] (hereinafter the "Code") on March 15, 2013. Accompanying the Debtor's petition was his Chapter 13 Plan of Reorganization. *See* Debtor's Ch. 13 Plan (Doc. No. 2). According to the terms of the Plan, the Debtor proposes to make monthly payments of $250 over an applicable commitment period of 60 months with a 0.00% distribution to unsecured creditors. *See id.* Confirmation was originally scheduled for June 6, 2013, at which time the Court heard oral argument on the present issue and requested the parties submit briefs for its consideration.

The Debtor owns a 2003 Mitsubishi Lancer that is subject to a "title lien"[3] in the original amount of $585.29, procured forty-one days prior to filing of this bankruptcy case. In the Debtor's Form 22C,[4] used for the purposes of calculating disposable income, the Debtor claims a deduction of $508.50[5] for the ownership expense of the automobile. This deduction results in a net disposable income of $250 and a 0.00% distribution to unsecured creditors. On April 18, 2013, the Trustee objected to confirmation on the basis that the Debtor was not permitted to deduct an ownership expense because its inclusion violated Section 1325 of the Code, as the title lien was unrelated to the original acquisition of the vehicle. Consequently, the Trustee believes that the Debtor's Plan fails to apply all disposable income toward payments to the Debtor's creditors. The Trustee contends that the elimination of this deduction will result in a *pro rata* distribution of $24,420.00 to unsecured creditors.

### CONCLUSIONS OF LAW.

#### A.

■ The Supreme Court, in *Ransom*, held that a debtor cannot claim an allowance for vehicle ownership costs, unless the debtor has some expense that qualifies by "falling within that category." *Ransom v. FIA Card Serv., N.A.*, — U.S. —, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011). In *Ransom*, the debtor owned an automobile free and clear of any liens, yet claimed a maximum ownership deduction in his schedules. *Id.* at 723. The Court concluded that Mr. Ransom was not entitled to the deduction and held that the "ownership category encompasse[d] the costs of a car loan or lease and nothing more." *Id.* at 725; *see also id.* at 721 ("A debtor who does not make loan or lease payments may not take the car-ownership deduction."). However, *Ransom* failed to define or provide any other guidance into the meaning of the term "car loan." Therefore, this Court must determine whether a loan, secured by an automobile's title but unrelated to its purchase, enables the Debtor to apply an ownership deduction on his Form 22C.

Section 1325(b) of the Code provides that where the Trustee objects to the confirmation of the Debtor's Chapter 13 Plan, the "court may not approve the plan unless" the Debtor either (1) provides a 100% dividend to unsecured creditors or (2) in-

---

2. 11 U.S.C. § 101 *et seq.*

3. For the purposes of this opinion, the term "title lien" refers to a non-purchase security interest, secured by an automobile's certificate of title.

4. Form 22C is a standardized form used to calculate a Chapter 13 debtor's disposable income.

5. The Debtor claims the maximum ownership expense, according to the National and Local Standards, of $517.00 less the $8.50 average monthly payment for the title lien, which is accounted for on Line 47 of Form 22C.

cludes all of his projected disposable income into the contents of the plan. *See* 11 U.S.C. § 1325(b)(1). In the context of Chapter 13, "disposable income" means current monthly income less amounts "reasonably necessary" for the maintenance and support of the debtor or the debtor's dependents.[6] *See* 11 U.S.C. § 1325(b)(2). Where a debtor's current monthly income exceeds the median income for a household of the debtor's size,[7] a determination of "amounts reasonably necessary to be expended" incorporates the provisions of the means test from Section 707(b)(2), which in turn incorporates the National and Local Standards promulgated by the IRS for the assessment of delinquent tax-payers ability to pay taxes owed. *See* 11 U.S.C. §§ 1325(b)(3), 707(b)(2)(A).

■ The National and Local Standards "are tables that the IRS prepares listing standardized expense amounts for basic necessities." *Ransom,* 131 S.Ct. at 722. These tables are accompanied with guidelines to their use, which can be found in a manual (hereinafter the "IRM") published by the IRS. *Id.* Although the guidelines are not incorporated into the Code in the same manner as that of the National and Local Standards, their instruction can assist the Court in interpreting the Standards themselves. *See Ransom,* 131 S.Ct. at 726; *In re Carroll,* Case No. 12–41350–JDP, slip op., 4 n. 3 (Bankr.Idaho April 15, 2013). Ownership expenses are primarily referenced in three provisions of the IRM. One provision mirrors the vague language used in *Ransom. See* IRM § 5.15.1.7(4)(B) ("The transportation stan-

dards consist of nationwide figures for *loan or lease* payments referred to as ownership costs.") (emphasis added). The other two provisions utilize more specificity in indicating that the ownership expense is associated with the financing of an automobile. *See id.* § 5.15.1.9(1)(B) ("Transportation. This includes ... vehicle payment (*lease or purchase*)....") (emphasis added); *see also id.* § 5.8.5.20.3(3) ("Ownership Expenses—Expenses are allowed for *purchase or lease* of a vehicle.") (emphasis added).

Based on the above language, the Court believes that the National and Local Standards intended to limit the automobile ownership expense to that associated with the financing or acquisition of a vehicle. Moreover, this conclusion is consistent with the Supreme Court's direction in *Ransom.* As the Supreme Court referenced on more than one occasion, the "nationwide figures" for the ownership expense are derived from "the five-year average of new and used car *financing* data...." *Ransom,* 131 S.Ct. at 722 (citing the IRM) (internal quotations omitted) (emphasis added); *see also id.* at 725. Since the ownership expense figure is based on only financing data and not the entire panoply of automobile loans, this IRM instruction, which the Supreme Court identified with approval, appears to indicate that the ownership expense likewise only applies to the costs associated with an automobile's acquisition. Additionally, the *Ransom* Court denoted that the purpose behind the 2005 amendments[8] to the Code was to prevent abuse

---

6. The Code also permits a debtor to deduct charitable contributions and business expenses, if the debtor is engaged in a business. 11 U.S.C. §§ 1325(b)(2)(A)(ii) & (B).

7. There is no dispute that the Debtor's current monthly income exceeds the median income in this case.

8. The BAPCPA created the means test, the incorporation of which into Section 1325 supplanted the pre-BAPCPA calculation for determining a debtor's reasonable expenses. *Ransom,* 131 S.Ct. at 721–722.

of the bankruptcy process and "ensure" that debtors paid "creditors the maximum they can afford." *Id.* at 725 (citing H.R.Rep. No. 109–31, pt. 1, p. 2 (2005)). Paralleling the *Ransom* Court's determination that a debtor with no automobile lien could not claim an ownership expense, this purpose is best achieved and abuse of the Code is best avoided [9] by requiring the Debtor to have an acquisition expense before utilizing the ownership deduction. *See id.* at 725.

This position is enhanced by the determinations of the only other two courts that the Court discovered to have addressed this issue. *See In re Alexander*, 2012 WL 3156760, *3 (Bankr.W.D.Mo.2012) ("[T]he Court concludes that the ownership expenses provided for in the Local Standards . . . refer to expenses related to the purchase or lease of a vehicle. And the fact that a loan is secured by a car, by itself, does not make the loan a vehicle ownership expense."); *see also In re Carroll*, Case No. 12–41350–JDP, slip op., 4 (Bankr.Idaho April 15, 2013) ("[T]he Court concludes that the intent of the deduction for vehicle ownership expenses is to accommodate the costs of acquiring a vehicle, and not expenses incurred by a debtor using the vehicle as collateral for some other sort of debt, such as a title loan."). Therefore, because of the Debtor's inappropriate deduction, it appears that the Debtor's Plan fails to include all disposable income, and the Court cannot approve its confirmation. *See* 11 U.S.C. § 1325(b)(1).

## B.

The Debtor stresses *Ransom's* vague language of "car loan or lease" and urges the Court to adopt a broader understanding. *See* Debtor's Br. 1. To support the adoption of this broader understanding, the Debtor points to the positions taken by the U.S. Solicitor General and the U.S. Trustee Program. *Id.* The Solicitor General, as amicus curiae in *Ransom*, contended that if a debtor had a qualifying expense of any amount, then the debtor could claim the full standardized expense. *Ransom*, 131 S.Ct. at 728 n. 8. The Debtor, however, overstates the significance. First, the Supreme Court declined to resolve the issue of the amount an eligible debtor could claim, so there is no indication that the Solicitor General's overall viewpoint is valid. *Id.* at 728. More importantly, the Solicitor General's contention required that the debtor have a qualifying expense. *Id.* at 728 n. 8. The Solicitor General did not address what constituted a qualifying expense, and therefore, the Court's ruling today is not inconsistent with his position.

The U.S. Trustee Program states that "the debtor cannot claim the vehicle ownership expense if the debtor does not have a secured loan or a lease on the vehicle." *See* Debtor's Br. 1. However, there is no indication that the Trustee Program's statement is accomplishing anything more than incorporating *Ransom's* vague language, and it certainly does not provide more specificity than the IRM, which serves as the actual guidebook for the Standards incorporated into the Bankruptcy Code. To adopt such broad, vague language would act to invalidate the more specific, more on-point IRM references to ownership expenses being associated with an automobile's acquisition.

The Debtor further believes that such reliance on the IRM's guidelines will result in error. *See* Debtor's Br. 2. The Debtor argues that the choice of language is irrel-

---

**9.** The Court is concerned that if the ownership deduction was available to a debtor with any type of automobile lien, future debtors would only be encouraged to take out *de minimus* title liens prior to seeking relief under the Code.

evant to IRS collecting practices and that the Court should not integrate the IRM's provision into its analysis because the IRM's logical operation proves inconsistent with and diverges from the statutory language of the means test. *Id.* at 2. Notwithstanding any discrepancies between the two statutory constructs, the Supreme Court cited with approval the IRS guidelines and relied upon their instruction. *Ransom*, 131 S.Ct. at 726. The Court sees no reason that it should not also find direction from these guidelines.

The Debtor believes that the primary, all encompassing, issue is one of good faith and disputes any attempt to utilize the means test as a vehicle for analyzing good faith. *See* Debtor's Br. 2. However, although good faith is a prerequisite to confirmation of a plan, *see* 11 U.S.C. § 1325(a)(3), the issue of good faith is not ultimately before the Court. The Court is conducting a Section 1325(b) analysis, not a Section 1325(a) analysis. Once the Trustee objected, the Court lost authority to approve the Plan unless "all" of the Debtor's "disposable income" is included into its contents. 11 U.S.C. § 1325(b)(1). Because the Court believes that the Debtor should have included into the Plan the income shielded by the inappropriate deduction, the Court finds that the Debtor failed to carry this burden.

Lastly, the Debtor implores the Court to disregard *Alexander's* conclusions.[10] The Debtor believes that the *Alexander* Court would have reached the same outcome without qualifying the vehicular ownership expense, as the case was replete with bad faith issues. Debtor's Br. 3. It is true that

the *Alexander* Court found bad faith in its case; however, the Debtor conveniently overlooks that the *Alexander* Court's "determination that the Debtors' plan ha[d] not been filed in good faith [was] *predicated* on the Court's conclusion that the loan at issue … [was] not a valid vehicle ownership expense under § 1325(b)." *In re Alexander*, 2012 WL 3156760, *2 (Bankr. W.D.Mo.2012) (emphasis added).

## CONCLUSION.

For the reasons stated above, the Court finds that the Debtor's Plan fails to satisfy the provisions of Section 1325(b) of the Code. Therefore, the Court must deny confirmation of the Debtor's Plan. Accordingly, it is hereby

**ORDERED** that the *Chapter 13 Trustee's Objection to Confirmation* is **SUSTAINED** and that the confirmation of the Debtor's Chapter 13 Plan is **DENIED.**

The Debtor is **DIRECTED** to file an amended Plan in accordance with this ORDER. Failure to file within a reasonable time will result in dismissal of the case on request from the Trustee or other interested party.

The Clerk is **DIRECTED** to serve a copy of this ORDER on the Debtor, Debtor's counsel and the Chapter 13 Trustee.

---

10. The Court finds interesting that the Debtor only attempted to distinguish this case from *Alexander,* and declined to differentiate it from *Carroll.*