**In re: Brian Keith FEAGAN, Debtor, Appellee,**

v.

**Mary Ida TOWNSON, Trustee, Appellant.**

**CIVIL ACTION NO. 4:16–CV–00108–HLM**

United States District Court, N.D. Georgia, Rome Division.

Signed 09/06/2016

Jennifer K. McKay, W. Jeremy Salter, Salter & Salter, P.C., Rome, GA, for Debtor, Appellee.

Brandi Lynn Kirkland, Office of Mary Ida Townson, Atlanta, GA, for Trustee, Appellant.

## ORDER

Harold L. Murphy, UNITED STATES DISTRICT JUDGE

This case is before the Court on the Chapter 13 Trustee's Notice of Appeal claiming error of the Bankruptcy Court for the Northern District of Georgia, Rome Division's (the "Bankruptcy Court") order confirming the Debtor's Chapter 13 plan [1].

### I. Standard of Review

The Court reviews the Bankruptcy Court's legal conclusions de novo. Hemar Ins. Corp. of Am., III. Student Assistance Comm'n v. Cox (In re Cox), 338 F.3d 1238, 1241 (11th Cir. 2003). The Court may not disturb the Bankruptcy Court's factual findings, however, unless such findings are clearly erroneous. Fed. R. Bankr. P. 8013. "A factual finding is not clearly erroneous unless 'this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed.'" IBT Int., Inc. v. Northern (In re Int. Admin. Servs., Inc.), 408 F.3d 689, 698 (11th Cir. 2005) (quoting Lykes Bros., Inc. v. United States Army Corps of Engr's, 64 F.3d 630, 634 (11th Cir.1995)). "Equitable determinations by a bankruptcy court are subject to review under an abuse of discretion standard." In re General Dev. Corp., 84 F.3d 1364, 1367 (11th Cir.1996). As this matter is a review of the legal determination of the Bankruptcy Court, it is reviewed de novo.

### II. Discussion

The issue in this case is whether the Bankruptcy Court erred in ruling that an "above-median" Chapter 13 debtor with car payments on account of a nonpurchase-money security interest may deduct the "Ownership Costs" allowance for purposes of calculating his projected disposable income under 11 U.S.C. § 1325(b). The Court concludes that the Bankruptcy Court erred, and that in calculating disposable income pursuant to 11 U.S.C. § 1325(b), an above median Chapter 13 debtor may not deduct from projected disposable income the Ownership Costs allowance for a vehicle encumbered solely by a nonpurchase-money security interest.

#### A. Background

The debtor in this case, Brian Keith Feagan (the "Appellee"), filed his initial petition for Chapter 13 relief and protection on April 10, 2015. (Bankr. Docket Entry No. 1 (Docket Entry No. 2–2).) He filed his Second Amended Plan on May 19, 2016. (Bankr. Docket Entry No. 26 (Docket Entry No. 2–6).) Mary Ida Townson ("Trustee") timely objected to confirmation of the Chapter 13 Plan, taking issue with a deduction Appellee claimed on line 13a of Form 22C–2. (Bankr. Docket Entry No. 33 (Docket Entry No. 2–8).) The deduction Appellee claimed was the Ownership Costs allowance for a title pawn on his otherwise unencumbered 2004 Ford Escape. (Bankr. Docket Entry No. 27 (Docket Entry No. 2–7).) The issue was briefed, and the Bankruptcy Court overruled Trustee's objection on April 8, 2016. (Bankr. Order of Apr. 8, 2016 (Bankr. Docket Entry No. 38 (Docket Entry No. 2–12)).) The Bankruptcy Court confirmed the Chapter 13 Plan on April 11, 2016. (Bankr. Order of Apr. 11, 2016 (Bankr. Docket Entry No. 39 (Docket Entry No. 2–13)).)

Section 1325(b) of the Code provides that "[i]f the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless ... the plan provides that all of the debtor's projected disposable income ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). Because the Second Amended Chapter 13 Plan of Appellee does not

provide for full payment of unsecured creditors, and Trustee objected to confirmation of the plan, Appellee must apply all of his projected disposable income to make payments to unsecured creditors. (Bankr. Docket Entry Nos. 26 and 33 (Docket Entry Nos. 2–6 and 2–8).) In the Chapter 13 context, projected disposable income is a result of a debtor's current monthly income less certain "reasonably necessary" expenses. 11 U.S.C. § 1325(b)(2).

Appellee's current monthly income, which is $3,898.00, exceeds the median family income in Georgia for a household of the same size as his. (Bankr. Docket Entry No. 27 (Docket Entry No. 2–7)); 11 U.S.C. § 101(10A); Census Bureau Median Family Income By Family Size, for cases filed between April 1, 2015 and May 14, 2015, *available at* https://www.justice.gov/ust/eo/bapcpa/20150401/bci_data/median_income_table.htm. Because Appellee is an above median debtor, his applicable commitment period for his Chapter 13 plan is 60 months. 11 U.S.C. § 1325(b)(4). And in addition, he must calculate his projected disposable income in accordance with the means test standards of 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3).

Section 707(b)(2)(A) permits certain deductions from a debtor's projected disposable income. 11 U.S.C. § 707(b)(2)(A). And Section 707(b)(2)(A)(ii)(I) leads to the deduction at issue in this case. Deductions from projected disposable income lessen the amount of a debtor's projected disposable income, and thus lessen the amount of money paid back to unsecured creditors. Section 707(b)(2)(A)(ii)(I) permits the deduction of "applicable monthly expense amounts specified under the National Standards and Local Standards ... issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)A(ii)(I). The National and Local Standards "are tables that the IRS prepares listing standardized expense amounts for basic necessities." Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 66, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). The IRS Local Standards for the time period in which this matter was filed allows a debtor to deduct an Ownership Costs allowance of $517.00.[1] The other category within the National and Local Standards is the "Operation Costs" category, which encompasses costs such as "maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls."[2]

But for a title pawn on his 2004 Ford Escape in the amount of $3,086.00, Appellee would own his vehicle free and clear. (Bankr. Docket Entry Nos. 26 and 27 (Docket Entry Nos. 2–6 and 2–7).) The title pawn constitutes a nonpurchase-money security interest on the vehicle. It is for this transaction that Appellee claims the $517.00 Ownership Costs allowance. Id.

In order to retain his car, Appellee's plan must provide a $51.43 monthly payment to National Title Pawn. (Bankr. Docket Entry No. 27 (Docket Entry No. 2–7)); (Bankr. Order of Apr. 8, 2016 at 3 (Bankr. Docket Entry No. 38 (Docket Entry No. 2–12)).) As a separate matter, Appellee is entitled to deduct this amount as the average monthly payment on account of a secured debt under§ 707(b)(2)(A)(iii). See 11 U.S.C. § 707(b)(2)(A)(i) (permitting

1. IRS Local Transportation Expense Standards—South Census Region, for cases filed between April 1, 2015, and May 14, 2015, *available at* https://www.justice.gov/ust/eo/bapcpa/20150401/bci_data/IRS_Trans_Exp_Stds_SO.htm.

2. IRS, Local Standards: Transportation, *available at* https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation (last updated May 25, 2016).

deduction of amounts determined under § 707(b)(2)(A)(iii)). "Because § 707(b)(2)(A)(iii), which permits the Ownership Costs deduction, does not permit a deduction for payments for debt, and to avoid duplicative deductions, [Appellee] must reduce the Ownership Costs deduction by the amount of the secured debt payment." (Bankr. Order of Apr. 8, 2016 at 3 (Bankr. Docket Entry No. 38 (Docket Entry No. 2–12)).) As a result, Appellee's projected disposable income is reduced by $465.57 ($517.00 - $51.43 = $465.57).

Factoring this number in with the rest of the allowed deductions has the effect of reducing Appellee's projected disposable income to $153.63. (Bankr. Docket Entry No. 27 (Docket Entry No. 2–7).) This number, multiplied by the 60 month applicable commitment period, pays general, unsecured creditors a minimal dividend of $9,217.80. Appellee's Second Amended Plan provides for a payment of $9,250.00 to general unsecured creditors. (Bankr. Docket Entry No. 26 (Docket Entry No. 2–6).)

If Appellee is unable to deduct the Ownership Costs allowance, his projected disposable income would rise by $465.57. This would result in a total monthly projected disposable income of $619.20 ($153.63 + $465.57 = $619.20).

### B. Ransom

Although not answering the precise question in this case, the Supreme Court addressed the Ownership Costs allowance in Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). There, the debtor claimed the deduction for a car he owned free and clear. 562 U.S. at 61–62, 131 S.Ct. 716. The Court ultimately denied the debtor a deduction for Ownership Costs and held that "[a] debtor who does not make loan or lease payments may not take the car-ownership deduction." 562 U.S. at 64, 131 S.Ct. 716. The Supreme Court also identified several policy considerations relevant to deciding the case before the Court today.

First, the Supreme Court noted that because Congress meant "the means test to approximate the debtor's reasonable expenditures on *essential* items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." 562 U.S. at 70, 131 S.Ct. 716 (emphasis added). Thus, a debtor has to actually incur an expense under the Ownership Costs category in order to take that deduction and for it to be "applicable" to him under § 707(b)(2)(A)(ii)(I). The Court then went on to ask "[w]hat expenses does the vehicle-ownership category cover?" 562 U.S. at 71, 131 S.Ct. 716. The Court answered that question by stating that "[t]he ownership category encompasses the costs of a car loan or lease and nothing more." Id.

Importantly, in reaching this conclusion, the Court noted that the purpose of Congress in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) was "to ensure that [debtors] repay creditors the maximum they can afford." 562 U.S. at 71, 131 S.Ct. 716 (internal quotation marks omitted). In other words, the statute is meant "to help ensure that debtors who can pay creditors do pay them." 562 U.S. at 64, 131 S.Ct. 716 (emphasis in original).

Further bolstering its conclusion that only loans and leases fall within the Ownership Costs category, the Court recognized that "the numerical amounts listed in the 'Ownership Costs' table are 'base[d] on the five-year average of new and used car financing data compiled by the Federal Reserve Board.'" 562 U.S. at 71, 131 S.Ct. 716 (citing App. to Br. of Resp't) (alteration in original). "In other words, the [amount of the deduction in the table] is

the average monthly payment for loans and leases nationwide; it is not intended to estimate other conceivable expenses associated with maintaining a car." 562 U.S. at 72, 131 S.Ct. 716. Thus, the debtor, with no encumbrance of any kind on his car, could not take the deduction. 562 U.S. at 80, 131 S.Ct. 716.

Next, the Court explained that the IRS supplemental guidelines, referred to as the Collection Financial Standards, may be used by courts for guidance in interpreting the National and Local Standards, which contain the Ownership Costs allowance. 562 U.S. at 72, 131 S.Ct. 716. The Court observed that consulting the guidelines was appropriate because "the IRS uses those tables for a similar purpose—to determine how much money a delinquent taxpayer can afford to pay the Government." Id. At the same time, the Court cautioned that "[t]he guidelines of course cannot control if they are at odds with the statutory language." Id.

## C. IRS Standards and Supplements

While Ransom answered the question of whether a debtor owning a vehicle with no encumbrance of any kind could deduct the Ownership Costs allowance, the inquiry before this Court requires an answer to which specific types of encumbrances fall within the Ownership Costs category. A careful look at the IRS Standards and guidelines, read with Ransom in mind, leads to the conclusion that payments on account of nonpurchase-money security interests do not fall within the category of Ownership Costs.

The Local Standards for the IRS state that "[t]he transportation standards for taxpayers with a vehicle consist of two parts: nationwide figures for *monthly loan or lease payments* referred to as ownership costs, and additional amounts for monthly operating costs." [3] Further, under the heading "Ownership Costs," the Local Standards go on to state "[t]he ownership costs ... provide the monthly allowances for the *lease or purchase* of up to two automobiles." [4]

The IRS also keeps the Internal Revenue Manual ("IRM"). A subpart of that Manual, the Financial Analysis Handbook, has a relevant provision. Section 5.15.1.9, in its "Transportation Section," makes reference to "vehicle payment (lease or purchase)." [5] More specifically, in Section 5.8.5.22.3 (in another part of the IRM labeled "Financial Analysis"), under the heading "Transportation Expenses," and subheading "Ownership Expenses," the manual explains that "[e]xpenses are allowed for *purchase or lease* of a vehicle." [6]

## D. Analysis

Thus far, it is clear that 11 U.S.C. § 707(b)(2)A(ii)(I) permits an above median Chapter 13 debtor an applicable deduction under the National and Local Standards used by the IRS. Appellee claimed the deduction for the Ownership Costs allowance allowed under those National and Local Standards for his car encumbered solely by a nonpurchase-money security interest. Ransom shows that the Ownership Costs category encompasses only car

---

**3.** IRS, Local Standards: Transportation, *available at* https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation (last updated May 25, 2016) (emphasis added).

**4.** Id. (emphasis added).

**5.** IRM 5.15.1.9(g), *available at* https://www.irs.gov/irm/jpart5/irm_05-015-001.html#d0e 3410.

**6.** IRM 5.8.5.22.3(3), *available at* https://www.irs.gov/irm/part5/irm_05-008-005r.html#d0e 1914 (emphasis added).

loans or leases. What is unclear up to this point is whether the Ownership Costs category encompasses both purchase-money debts and nonpurchase-money debts on a vehicle. The Court determines that the Ownership Costs category within the National and Local Standards does not encompass payments on account of a nonpurchase-money security interest on a vehicle such as Appellee's. This conclusion follows from the specific language used in the IRM coupled with the policy reasons for the enactment of BAPCPA outlined in Ransom.

The way the words "loan," "lease," and "purchase" are used in the IRS's National and Local Standards and the IRM is telling. The word "loan" is always used in conjunction with "lease," and several times the phrase "lease or purchase" is used. A lease is used to acquire a car through monthly payments. See Black's Law Dictionary, Lease (10th ed. 2014). The fact that the word loan is used in conjunction with lease and that the phrase "lease or purchase" is used elsewhere leads to the inference that the IRM is using all of these words to refer to the acquisition of a car, but not to refer to a loan taken out at a later date simply to acquire money, where the vehicle is only used as collateral for the loan.

This conclusion is bolstered by the Supreme Court's recognition that the amounts in the Ownership Costs tables are arrived at by averaging car *financing* data. Ransom, 562 U.S. at 71, 131 S.Ct. 716 (citing App. To Br. of Resp't) (emphasis added). This shows that the IRS has not considered title pawns in their figures, and thus only meant to speak to money used to acquire a car. Accord In re King, 497 B.R. 161, 164 (Bankr. N.D. Ga. 2013) ("Since the Ownership expense figure is based on only financing data and not the entire panoply of automobile loans, this IRM instruction,

which the Supreme Court identified with approval, appears to indicate that the ownership expense likewise only applies to the costs associated with an automobile's acquisition.").

The policy arguments cited in Ransom also lead to the conclusion that payments on account of nonpurchase-money security interests on vehicles should be excluded from the Ownership Costs category in the National and Local Standards. The Supreme Court made a point to note that Congress meant "the means test to approximate the debtor's reasonable expenditures on *essential* items." Ransom, 562 U.S. at 70, 131 S.Ct. 716 (emphasis added). Interpreting the Ownership Costs category the way this Court does today comports with this means test policy. Reading the Ownership Costs category to exclude payments on account of nonpurchase-money security interests only leaves payments on account of purchase-money security interests in the category; and the differences in the fundamental purpose of the two are stark. A debtor incurs a purchase-money security debt on a vehicle for the purpose of acquiring that vehicle, certainly an essential item in today's society. The debt paid goes toward owning that mode of transportation. However, a nonpurchase-money security debt is different. That debt is incurred on a car (perhaps already owned outright) and used to acquire cash. The purpose is not to eventually own a vehicle, but to obtain money for any purpose whatsoever, be it essential or luxury. The purpose is not necessarily to acquire an essential item, but just to use that essential item as collateral for something else. Thus, including nonpurchase-money security debts within the Ownership Costs category does not comport with the policy of using the means test to approximate the debtor's reasonable expenditures on essential items. Ransom, 562 U.S. at 70, 131 S.Ct. 716.

Additionally, the holding today aligns with the policy preference recognized in Ransom that BAPCPA was enacted "to ensure that debtors pay creditors the maximum they can afford." 562 U.S. at 62, 131 S.Ct. 716. By not allowing a deduction for nonpurchase-money security debts on a vehicle under the Ownership Costs category, Appellee's projected disposable income is not lessened, and unsecured creditors are paid more of what they are owed. And this is not inequitable; Appellee is still allowed a deduction for his payments to National Title Pawn (under § 707(b)(2)(A)(iii)) so that he may pay his creditor and keep his car, and he is also still allowed his deduction for operation expenses on his vehicle.

### E.  Additional Authority

The decision today comports with the majority of bankruptcy courts that have addressed the issue of whether a debtor may deduct the Ownership Costs allowance for a vehicle encumbered solely by a nonpurchase-money security interest. See In re Alexander, No. 12–40408–jwv13, 2012 WL 3156760, at *3, 2012 Bankr. LEXIS 3540, at *8–9 (Bankr. W.D. Mo. Aug. 1, 2012) ("[T]he Court holds that the vehicle ownership expense established by the IRS and incorporated into the means test (§ 707(b)(2)) and, by extension, the calculation of disposable income under § 1325(b), refers solely to expenses related to the purchase or lease of a vehicle."); In re Carroll, No. 12–41350–JDP, 2013 Bankr. LEXIS 3072, at *4 (Bankr. D. Idaho Apr. 15, 2013) ("[T]he Court concludes that the intent of the deduction for vehicle ownership expenses is to accommodate the costs of acquiring a vehicle, and not expenses incurred by a debtor using the vehicle as collateral for some other sort of debt, such as a title loan."); In re King, 497 B.R. at 164 ("[T]he Court believes that the National and Local Standards intended to limit the automobile ownership expense to that associated with the financing or acquisition of a vehicle."); In re Sires, 511 B.R. 719, 725 (Bankr. S.D. Ga. 2014) (agreeing with the reasoning and conclusion of Alexander, Carroll, and King)

### F.  Addressing Arguments to the Contrary

Appellee makes several arguments for the opposite conclusion. For the following reasons, the court rejects those arguments.

First, Appellee essentially argues that the broad language used in Ransom indicates that any encumbrance on a vehicle will constitute an ownership cost. Appellee specifically cites the language stating "[b]ecause Ransom owns his vehicle free and clear of any encumbrance, he incurs no expense in the 'Ownership Cost' category of the Local Standard." Ransom, 562 U.S. at 73, 131 S.Ct. 716. However, Appellee ignores the fact that the Supreme Court was not answering the specific question before the Court today. Further, that statement by the Supreme Court does not equate to an affirmative statement that any encumbrance will constitute a loan or lease that fits into the Ownership Costs category. In fact, as noted above, the policy reasons behind enacting BAPCPA and the language used within the IRS supplements lead to the conclusion that courts must discriminate between payments on account of purchase-money security interests and nonpurchase-money security interests.

Additionally, Appellee argues that the permissive nature of the use of the IRS guidelines allows the court to deviate from the meaning of its words. Appellee's argument stems from the fact that the guidelines kept by the IRS are just that, guidelines. See Ransom, 562 U.S. at 73 n.7, 131 S.Ct. 716. This, in and of itself is no reason

to deviate from the guidelines. As noted above, there are specific policy reasons for excluding payments on account of nonpurchase-money security interests from the Ownership Costs category. Also, the Supreme Court found the instruction of the IRS guidelines helpful in Ransom and relied upon their instruction. Ransom, 562 U.S. at 72–73, 131 S.Ct. 716. This Court finds no reason why it should not take similar direction from the guidelines. Accord In re King, 497 B.R. at 166.

Next, Appellee argues that there is essentially no meaningful difference between payments on account of a purchase-money Security interest and a nonpurchase-money security interest on a vehicle. This argument fails for the reason that Appellee overlooks the critical difference in purpose of the two interests. A purchase-money security debt is incurred so that a debtor may procure an essential item, a vehicle. However, a nonpurchase-money security debt is incurred for cash that can be used for anything; the vehicle is simply collateral.[7] Excluding payments on account of nonpurchase-money security interests from the Ownership Costs category more closely aligns with the purpose of using the means test to "approximate the debtor's reasonable expenditures on *essential* items." 562 U.S. at 70, 131 S.Ct. 716 (emphasis added). It is true that, for both types of security interests, the debtor must make payments on the loans to retain possession of the vehicle. Yet a debtor is still allowed a deduction for payments to secured creditors under Section 707(b)(2)(A)(iii) whether the debt be purchase-money or nonpurchase-money, and

this deduction allows him to make payments to retain possession. See In re Carroll, 2013 Bankr. LEXIS 3072, at *5. The difference is that, for a purchase-money security interest, the debtor may deduct the Ownership Costs allowance because he incurred the debt in order to obtain the essential item, a vehicle.

Next, Appellee alleges that a ruling in his favor "would not create a system of abuse." However, the Court need not decide whether a ruling in favor of Appellee would have detrimental systemic consequences because the Court can find no affirmative reason for ruling in favor of Appellee.

Finally, Appellee argues that his Chapter 13 Plan will fail without deduction of the Ownership Costs allowance and that he will lose his vehicle by repossession. It is difficult to see how this is so, because he is already receiving a deduction for payments on a secured interest and an Operating Costs deduction for the vehicle. Any qualm with the numbers resulting from the means test is a problem with Congress's formula itself. However, if any true inequity results from the means test, and the numbers are not reflective of Appellee's actual ability to repay his creditors, the Bankruptcy Court on remand has the power to adjust accordingly. See Hamilton v. Lanning, 560 U.S. 505, 519, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) ("[A] court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known

---

**7.** Appellee additionally argues that because the right to encumber is a right included in the ownership of property, payments on account of a nonpurchase-money security interest should fall in the Ownership Costs Category. See United States v. Craft, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). It

does not matter that the right to encumber by a nonpurchase-money security interest is a right included in owning property, because the purposes in attaining the two security interests are different, and the difference in purpose is what is critical.

or virtually certain information about the debtors future income or expenses."). That may be allowed. But even so, a deduction for the Ownership Costs allowance is not the correct route to takes in this case.

### G. Summary

For the reasons stated above, Appellee may not deduct the Ownership Costs allowance contained within the IRS's National and Local Standards for a nonpurchase-money security interest on his vehicle. The Court therefore reverses the Bankruptcy Court's decision.

### III. Conclusion

ACCORDINGLY, the case is **REVERSED** and **REMANDED** back to the Bankruptcy Court for a ruling not inconsistent with this Order.

IT IS SO ORDERED, this the 6th day of September, 2016.

